OPINION
{¶ 1} Defendant-Appellant, Jeffrey G. Lawson, appeals a verdict of the Union County Court of Common Pleas, convicting him of felonious assault. On appeal, Lawson asserts that the State failed to prove the element of serious physical harm beyond a reasonable doubt. Finding that the jury's verdict was not against the manifest weight of the evidence, we affirm the trial court's judgment.
 {¶ 2} In February of 2006, a Union County Grand Jury indicted Lawson for felonious assault of his girlfriend, Kim Cline, in violation of R.C. 2903.11(A)(1), a felony of the second degree. On March 31, 2006, a jury trial was held, and the jury found Lawson guilty of felonious assault. Lawson was sentenced to six years of imprisonment, three years of post-release control, and ordered to pay costs and restitution for Cline's medical expenses.
 {¶ 3} The evidence and testimony presented at the trial provided the following information about the incident. A replay of Cline's call to the Union County 9-1-1 services during the early morning of January 1, 2006, revealed her statement that Lawson had beaten her. (State's Ex. 5). When asked if she needed a medic, Cline responded "yes". (State's Ex. 5). After police officers arrived and questioned her and Lawson, she was taken to the Union County Memorial Hospital emergency room.
 {¶ 4} Officer Katie Archer, who was dispatched following Cline's 9-1-1 call, testified that she spoke with Cline upon arriving at the scene. She stated that Cline was "extremely upset" and had "visible injuries", including a blackened left eye and blood on her pants. (Tr. p. 64). She testified that Cline told her Lawson had assaulted her, that her nose was bleeding, and that her face, head, and lip hurt. (Tr. p. 64). Officer Archer stated that she then proceeded to take photos of Cline, and she noted that the injuries to Cline's face depicted in the photos were consistent with an assault. (Tr. p. 66). She further testified that Lawson said he did not hit Cline, and that she sustained her injuries from falling. (Tr. p. 70).
 {¶ 5} Cline's parole officer, Charles Carter, testified that he met with Cline on January 4, 2006, three days after the incident. (Tr. p. 78). He stated that he asked her to return on January 6, 2006, so that he could take photos of her. He said that he wanted to take photos "[b]ecause of the damage to her face," and that the previous picture he had of her was nothing like the way she looked at that time. (Tr. p. 78).
 {¶ 6} On cross-examination, Carter testified that when he met with Cline in February of 2006, she no longer had any bruising. (Tr. p. 80).
 {¶ 7} Patrolman Brian Payne, the other policeman dispatched to Cline's house, testified that he arrived first and spoke with Lawson. He stated that Lawson told him that Cline "fell down and hit her face and hurt herself." (Tr. p. 135). Payne further testified that when he first saw Cline, she was extremely upset and asked him to help her because Lawson was beating on her. (Tr. p. 137). He stated that he called for medics because Cline had "severe injuries to her face." (Tr. p. 138).
 {¶ 8} The attending emergency room physician, Dr. Pfeifer, testified that Cline presented with jaw pain, headache, and neck stiffness. (Tr. p. 29). Dr. Pfeifer's examination revealed that Cline was "significantly" bruised about her face, had a probable nasal fracture, tenderness and bruising of her jaw, and bruising on her head, upper left shoulder, and left arm. (Tr. pp. 29-33). Cline told Dr. Pfeifer that she had been assaulted by her boyfriend, Lawson. (Tr. p. 31).
 {¶ 9} A nurse practitioner, Julie Sabo, testified that Cline attended follow-up medical appointments at her office in Marysville from January of 2006 through March of 2006. (Tr. pp. 47-55). Sabo stated that on the first two visits on January 3 and January 10, she observed that Cline's left eye was reddened and bloody, that she had multiple bruises around her eyes, particularly the left eye, that she had nasal swelling, and that she had multiple bruises on her arms and left shoulder. (Tr. pp. 47, 50). Sabo also stated that Cline complained of blurred vision in her left eye, headaches, nasal pain, and facial and neck pain on both visits. (Tr. pp. 50-51). She noted that, during a subsequent visit on January 24, Cline's bruises were healing and that her basic exam results were normal, but that she still "complained of headache in her left frontal or forehead and the back of the head," blurred vision and loss of peripheral vision in her left eye, and stiffness on the left side of her neck. (Tr. pp. 52-53).
 {¶ 10} Sabo further testified that Cline again visited her on February 20 and March 7, 2006, due to headache pain. (Tr. pp. 53-55). She stated that Cline's bruising had healed by the February visit. (Tr. p. 58). She prescribed pain medication at each of the five visits between January 3 and March 7. (Tr. pp. 54-55). Each prescription consisted of five days' worth of pain medication. (Tr. p. 56).
 {¶ 11} Sabo testified that she last saw Cline on March 21, 2006. However, at that point Cline no longer complained of headaches. (Tr. pp. 55-56). In fact, Sabo stated that Cline's visit was for reasons unrelated to her prior injuries. (Tr. pp. 55-56).
 {¶ 12} Additionally, Cline's dentist, Dr. Guster, testified that on January 16, 2006, he agreed to conduct an emergency examination of her, where he discovered that two of her teeth were broken. (Tr. p. 102). One of the broken teeth, located on the left side of her mouth, required a root canal procedure. (Tr. pp. 102, 118).
 {¶ 13} On cross-examination, Cline admitted that she did not suffer any permanent disfigurement or incapacitation as a result of her injuries. (Tr. p. 127). Moreover, she stated that she believed she was abusing the pain medication that she received from Sabo, (Tr. p. 124), that she had been recommended to check into an inpatient drug treatment center in the past, (Tr. p. 123), and that, during her January 3 visit to Sabo, she did not tell her that she had already received a prescription for Vicodin from Dr. Pfeifer on January 1 because she did not recall receiving one at that time. (Tr. p. 128).
 {¶ 14} During the trial, Lawson and Cline recounted conflicting stories regarding the cause of her injuries. On the evening of December 31, 2006, they had a disagreement about who would drive after leaving a local bar. (Tr. pp. 85, 156). Both were intoxicated. (Tr. pp. 85, 156). Cline alleged that, upon reaching Lawson's parked truck outside the bar, she attempted to get into the driver's seat to retrieve the keys from the ignition. (Tr. p. 85). She stated that, upon doing so, Lawson "yanked me out of there and hit me a few times * * * [i]n the face. He hit my head." (Tr. p. 85). Cline further testified that Lawson continued to hit her while inside the truck en route to her house, and that she bit his finger in response. (Tr. p. 86). Cline stated that, after they reached her house, she called the 9-1-1 services, and then locked herself in the bedroom until police arrived. (Tr. pp. 91-92.).
 {¶ 15} According to Lawson's testimony, Cline received her injuries from falling numerous times. (Tr. pp. 157-58). Lawson also testified that Cline shoved the truck into park while he was driving her home, requiring him to slam on the brakes and throwing Cline into the windshield.[1] (Tr. p. 158). Lawson stated that he did not strike Cline before they got into the truck, and that inside the truck he "pushed her like that right there when she was biting my finger. I did kind of push, slap, shove her like that, you know." (Tr. p. 158).
 {¶ 16} After hearing all of the testimony, a jury convicted Lawson of felonious assault. It is from this verdict Lawson appeals, presenting the following sole assignment of error for our review.
 Assignment of Error THE STATE FAILED TO PROVE THE ELEMENT OF SERIOUS PHYSICAL HARMBEYOND A REASONABLE DOUBT, THEREBY PRECLUDING A GUILTY VERDICTFOR FELONIOUS ASSAULT.
 {¶ 17} In his sole assignment of error, Lawson contends that the State failed to prove the element of serious physical harm beyond a reasonable doubt. Specifically, Lawson asserts that the verdict was against the manifest weight of the evidence because Cline did not experience headache pain of any duration and she only continued to complain of head and neck pain in order to obtain pain medication, to which she was addicted. We disagree.
 {¶ 18} The applicable standard when reviewing a claim based on manifest weight of the evidence in a criminal case is as follows:
The court, reviewing the entire record, weighs the evidenceand all reasonable inferences, considers the credibility ofwitnesses and determines whether in resolving conflicts in theevidence, the jury clearly lost its way and created such amanifest miscarriage of justice that the conviction must bereversed and a new trial ordered.
 State v. Mendoza, 137 Ohio App.3d 336, 347, 2000-Ohio-1689, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175; see, also, State v. Thompkins (1997), 78 Ohio St.3d 380, 387, superseded by state constitutional amendment on other grounds byState v. Smith (1997), 80 Ohio St.3d 89. The Ohio Supreme Court recognized that "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony." Thompkins, supra at 387, citing Tibbsv. Florida (1982), 457 U.S. 31, 42. However, the weight of the evidence and credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass (1967),10 Ohio St.2d 230, para. one of the syllabus. Thus, a reviewing court's discretion to reverse should be invoked "only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant." State v. Jones (2005), 9th Dist. No. 22545,2005-Ohio-5502 at ¶ 11, citing State v. Otten (1986),33 Ohio App.3d 339, 340.
 {¶ 19} The felonious assault statute, R.C. 2903.11(A)(1), provides, in pertinent part, that "No person shall knowingly * * * [c]ause serious physical harm to another * * *." R.C.2901.01(A)(5) defines "serious physical harm" as any of the following:
(a) Any mental illness or condition of such gravity as wouldnormally require hospitalization or prolonged psychiatrictreatment;
 (b) Any physical harm that carries a substantial risk ofdeath;
 (c) Any physical harm that involves some permanent incapacity,whether partial or total, or that involves some temporary,substantial incapacity;
 (d) Any physical harm that involves some permanentdisfigurement or that involves some temporary, seriousdisfigurement;
 (e) Any physical harm that involves acute pain of suchduration as to result in substantial suffering or that involvesany degree of prolonged or intractable pain.
 {¶ 20} Lawson's contention that the State failed to prove that Cline suffered serious physical harm consists of two arguments: (1) that Cline's continued visits to Sabo for the two months following the incident were for the sole purpose of obtaining medication for her drug addiction, and (2) that even if Cline legitimately experienced headaches, two months' duration was not long enough to constitute "serious physical harm".
 {¶ 21} First, Lawson argues that he did not cause serious physical harm to Cline because her complaints of headaches during the follow-up visits to Sabo were a pretext to obtain pain medication. In support of this argument, Lawson points to Cline's testimony on cross-examination that she was abusing the pain medication and that she had received a recommendation to visit an inpatient drug treatment center in the past. Lawson also relies on Sabo's testimony that she performed no other medical tests besides basic examinations before prescribing the medication to buttress his assertion.
 {¶ 22} However, the testimony also supports the legitimacy of Cline's claims of persistent pain. Sabo testified that Cline consistently complained of facial, head, and neck pain, particularly on the left side of her head and face, which sustained the most severe bruising and swelling. Additionally, Sabo's testimony that Cline's last visit on March 21, 2006, had nothing to do with Cline's prior injuries, and that no pain medication was prescribed on that date, undermines Lawson's allegation that drugs were the true incentive behind Cline's visits to Sabo.
 {¶ 23} Moreover, the State countered discrepancies in Cline's testimony with evidence of numerous letters and phone conversations between Lawson and Cline, which occurred while Lawson was in jail awaiting trial. The subject of some of this correspondence involved Lawson telling Cline that "all you have to do is write on it that you were intoxicated, and had taken your mediciene (Sic.) (pills) and that you do not remember what happened that night. * * * Tell them you don't remember what you said to the cops." (State's Exh. 10); see, also, Tr. p. 118. Based on this evidence, the jury could have interpreted Cline's testimony about abusing the medication as an attempt to vindicate Lawson.
 {¶ 24} Ultimately, whether or not Cline continued to visit Sabo due to legitimate pain or merely to feed a drug addiction was a question of Cline's credibility. Where conflicting testimony exists, "`The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.'" State v. Shafer, 3d Dist. No. 6-05-15, 2006-Ohio-4189, at ¶ 28 quoting State v. Awan (1986),22 Ohio St.3d 120, 123. Cline's credibility was an issue for the trier of fact. Obviously, the jury chose to believe that her continued complaints of pain following the incident were valid. Thus, we will not second guess the conclusion of the trier of fact.
 {¶ 25} Second, Lawson argues that Cline's complaints of headaches for two months were insufficient to satisfy the serious physical harm element. To support this contention, Lawson attempts to distinguish this case from State v. Netherton (June 11, 1997), 9th Dist. No. 18108. The victim in Netherton was kicked multiple times in the head by the defendant and shot two times by a third party during an altercation. Id. Despite having no open head wounds, the victim claimed that he experienced headaches for one year following the incident. Id. As a result, the defendant was convicted of felonious assault.
 {¶ 26} On appeal, the defendant challenged that conviction, arguing that the finding of serious physical harm was against the manifest weight of the evidence because the victim did not complain of head injuries at the hospital, witnesses testified that he was only kicked two times in the head, and his credibility was questionable. Id. In upholding the conviction, the Ninth District stated that, based on the evidence, the jury was free to conclude (1) that the victim experienced headaches, (2) that two kicks to the head were sufficient to cause the victim's claimed headaches, and (3) that, even though the victim was a difficult witness, his claim of continued headaches was valid. Id. The Ninth District did not emphasize the length of time of the headaches as being the dispositive factor, but emphasized instead the violent nature of the harm, the fact that the trauma from the gunshot wounds may have preoccupied the victim from complaining of his head injuries, and that the victim's credibility was a determination for the jury. Id.
 {¶ 27} Likewise, in the instant case, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice requiring reversal by finding that two months of persistent pain constituted either "acute pain of such duration as to result in substantial suffering" or "any degree of prolonged or intractable pain" under R.C. 2901.01(A)(5)(e). Lawson's multiple blows to Cline caused a probable nasal fracture, blood in her left eye, swelling and bruising over her left eye, face, and head, bruising on her back and arms, persistent headaches for two months, and a broken tooth on the left side of her mouth requiring a root canal procedure. Therefore, we are not persuaded by Lawson's argument that Cline did not suffer serious physical harm. See Jones, 2005-Ohio-5502
(upholding felonious assault conviction on finding of serious physical harm where victim was punched numerous times, left immobile and bleeding on the floor, and suffered nasal bone fracture, blood in left eye, bruising and swelling over left eye, and fractured second molar).
 {¶ 28} Accordingly, Lawson's assignment of error is overruled.
 {¶ 29} Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 Bryant, P.J., and Shaw, J., concur.
[1] We note that the record is devoid of any evidence, other than Lawson's testimony, supporting his assertion about the cracked windshield, and that Lawson did not relay this allegation to the police when they questioned him the night of the incident. (Tr. p. 176). It appears that the jury chose to believe Cline's version of the events. Lawson does not challenge this on appeal, but rather focuses solely on the seriousness of the harm done to Cline.