[Cite as *State v. Beaver*, 2014-Ohio-4995.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                 CASE NO. 14-13-15

      v.

DEVVEN W. BEAVER,                      O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Union County Common Pleas Court
Trial Court No. 2012-CR-0293

Judgment Affirmed

Date of Decision: November 10, 2014

APPEARANCES:

    *Alison Boggs* **for Appellant**

    *Rick Rodger* **for Appellee**

**PRESTON, J.**

{¶1} Defendant-appellant, Devven W. Beaver ("Beaver"), appeals the July 11, 2013 judgment entry of conviction and sentence of the Union County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} On December 21, 2012, the Union County Grand Jury indicted Beaver on four counts, including: Count One of felonious assault in violation of R.C. 2903.11(A)(1), (D)(1)(a), a second-degree felony; Count Two of robbery in violation of R.C. 2911.02(A)(3), (B), a third-degree felony; Count Three of kidnapping in violation of R.C. 2905.01(A)(3), (C)(1), a first-degree felony; and, Count Four of abduction in violation of R.C. 2905.02(A)(2), (C), a third-degree felony. (Doc. No. 1).

{¶3} On January 17, 2013, Beaver entered pleas of not guilty at arraignment. (Doc. No. 7).

{¶4} On July 3, 2013, the State filed motions requesting that the trial court issue an arrest warrant for the victim, Krista Buckner ("Buckner"), as a material and necessary witness, and requesting that the trial court declare her a court's witness. (Doc. Nos. 56, 57). On that same day, the trial court issued a warrant for Buckner's arrest as a material and necessary witness. (July 3, 2013 JE, Doc. No. 58). On July 8, 2013, the trial court held a hearing on the State's motion requesting that the trial court declare Buckner a court's witness. (July 8, 2013 Tr.

at 3). On that same day, the trial court granted the State's motion and declared Buckner a court's witness under to Evid.R. 614(A). (July 8, 2013 JE, Doc. No. 62).

{¶5} On July 10, 2013, Count Two of the indictment was dismissed at the State's request. (July 10, 2013 JE, Doc. No. 70).

{¶6} On July 10-11, 2013, a jury trial was held. At the end of the State's case-in-chief, Beaver moved for a Crim.R. 29 judgment of acquittal for Counts One, Three, and Four of the indictment. (July 15, 2013 JE, Doc. No. 75). The trial court granted Beaver's motion as to Count Three and denied his motion as to Counts One and Four. (*Id.*). The jury found Beaver guilty as to Count One and not guilty as to Count Four. (July 11, 2013 Tr. at 70-71); (July 11, 2013 JE, Doc. No. 76). Thereafter, the trial court sentenced Beaver to eight years imprisonment. (*Id.* at 77); (*Id.*).

{¶7} The trial court filed its judgment entry of sentence on July 11, 2013, and Beaver filed his notice of appeal on August 2, 2013. (Doc. Nos. 76, 82). Beaver raises four assignments of error for our review.

### Assignment of Error No. I

**The jury lost its way when reviewing the evidence, resulting in a verdict that is against the manifest weight of the evidence and the sufficiency of the evidence.**

{¶8} In his first assignment of error, Beaver argues that his felonious assault conviction was against the manifest weight of the evidence and was not supported by sufficient evidence. In particular, Beaver argues that the State failed to produce any corroborating evidence that he assaulted Buckner. Beaver argues that Buckner was lying and that she caused the injuries to herself by hitting herself with a car door because she was intoxicated.

{¶9} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). As such, we address each legal concept individually.

{¶10} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier

-4-

of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

**{¶11}** On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

{**¶12**} The criminal offense of felonious assault is codified in R.C. 2903.11, which provides, in relevant part: "No person shall knowingly * * * [c]ause serious physical harm to another * * *." R.C. 2903.11(A)(1). The requisite culpable mental state for felonious assault is "knowingly." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "Serious physical harm" is any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

{¶13} The State presented testimony from nine witnesses during the trial. Although she was declared a court's witness, Buckner was called as the State's first witness. (July 10, 2013 Tr., Vol. I, at 99). Buckner testified that she and Beaver went to Chillicothe, Ohio for the weekend following the Thanksgiving holiday in November 2012. (*Id.* at 100). At the time of the incident, she had been in a relationship with Beaver for approximately four or five years. (*Id.*).

{¶14} Beaver was to drive her to Marysville, Ohio on Monday, November 26, 2012 so that she could go to work at Honda of America Manufacturing, Inc. ("Honda"). (*Id.* at 101). Buckner was to report to work at 4:00 or 4:30 p.m., but did not arrive to the parking lot outside Honda until 5:00 or 5:30 p.m. (*Id.*). She testified that she had been drinking beer and vodka earlier that day. (*Id.* at 118). She testified that she was "buzzed," but not drunk. (*Id.* at 118, 119).

{¶15} When they arrived at Honda, Buckner got out of the car to retrieve a pair of work boots from her mother's car, which was in the parking lot because Buckner's brother also worked for Honda. (*Id.* at 101-102). After she retrieved her work boots, she got back into the car with Beaver to talk with him while she put her boots on. (*Id.* at 102-103). At that point, she testified that they began to argue over gas money—that is, he wanted her to give him gas money and she told him that she did not have any money. (*Id.* at 103).

{¶16} While they were arguing, Beaver drove out of the Honda parking lot. (*Id.* at 104). Buckner testified that she told Beaver to stop the car and to let her out, but he would not. (*Id.* at 105). According to Buckner, Beaver was driving to her mother's house so that she could get money from her mother to give to Beaver. (*Id.* at 113-114). Shortly after the couple left the Honda parking lot, Buckner testified that Beaver punched her in the face two or three times, and that she was scared of him and was fighting back because she knew what he was capable of. (*Id.* at 105-106, 161). After Beaver punched her, Buckner's nose began to bleed. (*Id.* at 107).

{¶17} Beaver then pulled over by a gas station, and Buckner got out of the car, but she stated she had to get back into the car because she did not have another way to get home. (*Id.* at 111). According to Buckner, they were lost and she wanted to go inside the gas station to ask for directions, but Beaver did not want her to go inside because he was concerned someone might think he hurt her since she had blood all over her clothes. (*Id.*). She further testified that she attempted to call 9-1-1 while she was in the car on the way to her mother's house, but could not get through to an operator due to poor cell-phone reception. (*Id.* at 165).

{¶18} When Beaver and Buckner arrived at Buckner's mother's house around 8:00 p.m., Buckner went inside, called 9-1-1, and told the dispatcher that Beaver struck her in the face. (*Id.* at 113-114).

{¶19} Lieutenant John Shaffer ("Lieutenant Shaffer") of the Marion Police Department responded to Buckner's mother's house. (*Id.* at 116). By the time Lieutenant Shaffer arrived, Beaver already left to get gas. (*Id.*). While Lieutenant Shaffer was interviewing Buckner, he took Buckner's clothing as evidence. (*Id.* at 117). After Buckner spoke with Lieutenant Shaffer, she sought medical treatment at Marion General Hospital. (*Id.* at 120). Shortly after leaving the hospital, Buckner spoke with Union County Sheriff Deputy Kelly Nawman ("Deputy Nawman"). (*Id.* at 119-120).

{¶20} At Marion General Hospital, Buckner was diagnosed with a broken nose. (*Id.* at 120). Buckner's injuries required corrective surgery, which was performed about one month later. (*Id.* at 120). Buckner testified that her injuries were "awful" and that her face was swollen and her eyes were black and blue. (*Id.* at 121). She testified that she had not yet recovered from her injuries and said, "It's still dark and still – the inside of my nose is – hurts, you know, around dust, dirt, things like that; so it's not completely healed now." (*Id.*). According to Buckner, this was not the first time Beaver struck her—he broke her nose before. (*Id.* at 108, 110).

{¶21} Buckner testified that, in addition to statements that she provided to law enforcement and medical professionals, she provided an affidavit to Beaver's counsel on March 11, 2013—she identified the affidavit as State's Exhibit Four. (*Id.* at 122). She testified that Beaver and his mother told her to write the affidavit and she did because she felt sorry for him and still loved him. (*Id.* at 123, 124). Specifically, she testified that Beaver's mother picked her up and drove her to Beaver's counsel's office so she could provide the affidavit. (*Id.*). In the affidavit, she averred that she was drinking on November 26, 2012, that she was not clear about the events of that night, and that she could have hit her nose on the car door. (*Id.* at 124). However, Buckner testified that the portion of the affidavit where she stated that she could have hit her nose on the car door was not true. (*Id.*). Rather, Buckner testified at trial that she was not hit by a car door, did not fall on her face when she was retrieving her work boots from her mother's car, and did not fall at any other time during the ride back to her mother's house. (*Id.* at 119, 132-133).

{¶22} On cross-examination, Buckner testified that she and Beaver were drinking "[a] fifth or a pint" of vodka on the car ride from Chillicothe to Marysville. (*Id.* at 127). Buckner confirmed that she lied in the March 11, 2013 affidavit, but further indicated that she wrote in the affidavit, "I don't think he needs prison, but help. Prison does him no good." (*Id.* at 134). Buckner also testified that she sent Beaver a letter while he was in jail awaiting trial, which she

identified as Defendant's Exhibit A. (*Id.* at 135). In the letter, Buckner said that she did not agree with one of the charges against Beaver. (*Id.* at 136).

{¶23} On re-direct examination, Buckner identified State's Exhibits Two and Three as the statements she provided Lieutenant Shaffer and Deputy Nawman. (*Id.* at 157-161). Buckner testified that she provided the same statement to Lieutenant Shaffer and Deputy Nawman. (*Id.*). She further testified that she made the same statement to the medical staff at Marion General Hospital when she sought treatment for her injuries. (*Id.* at 161-162).

{¶24} On re-cross examination, Buckner testified that she did not want to testify against Beaver and that she was only testifying against him because she was arrested prior to the hearing for evading the prosecutor's efforts to serve her with a subpoena to testify. (*Id.* at 170-171). She indicated that she was telling the truth and that the reason she did not want to testify was not because she was concerned about perjury. (*Id.* at 171-172).

{¶25} The next day, Marion City Police Department 9-1-1 dispatcher Bevin Peppard ("Peppard") testified that she received a 9-1-1 emergency call from Buckner at 8:08 p.m. on the evening of November 26, 2012 while she was working as a dispatcher. (July 10, 2013 Tr., Vol. II, at 183). Peppard identified State's Exhibit Five as a true and accurate audio recording of Buckner's 9-1-1 call, which was subsequently played for the jury. (*Id.* at 184-186).

{¶26} Lieutenant Edward Brown ("Lieutenant Brown") of the Marion City Police Department testified that he was dispatched to Buckner's mother's house on November 26, 2012. (*Id.* at 188). Shortly after he arrived at Buckner's mother's house, he learned that Beaver had already left to go to the gas station. (*Id.* at 190). As a result, Lieutenant Brown drove to the gas station, saw Beaver, and pulled him over. (*Id.* at 191-192). Lieutenant Brown testified that Beaver told him that Buckner was drinking and arguing with him while they were driving from Chillicothe to Marysville. (*Id.* at 192). He further testified that Beaver told him that Buckner tripped and fell in the Honda parking lot and that was how she became injured. (*Id.* at 193). He testified that Beaver did not indicate that Buckner hit her face on the car door. (*Id.*). On cross-examination, Lieutenant Brown testified that he did not notice any alcohol odor on Beaver's breath and that he did not appear to be impaired. (*Id.* at 195). Further, he testified that Beaver did not appear as if he had been in a fight or altercation and he did not recall seeing any blood on him. (*Id.* at 196). However, he did not examine Beaver's hands for any bruises or scrapes. (*Id.*).

{¶27} Lieutenant Shaffer testified that he too was dispatched to Buckner's mother's house on November 26, 2012. (*Id.* at 198). After arriving at Buckner's mother's house, Lieutenant Shaffer spoke with Buckner about the incident. (*Id.* at 199). He testified, "She was upset, seemed angry." (*Id.*). He testified that her

clothes were covered in blood and that she had a small bump above her right eye and an injury to her nose. (*Id.*). He testified that Buckner told him that Beaver assaulted her in his car after leaving the Honda parking lot. (*Id.* at 200). Buckner told him that she had been drinking earlier and he smelled the odor of alcohol on Buckner's breath; however, he stated that she did not appear to be intoxicated. (*Id.* at 202-203). Lieutenant Shaffer identified State's Exhibits Six and Seven as the Honda uniform—a white shirt and white pants—Buckner was wearing on the evening of November 26, 2012. (*Id.* at 207-208). Lieutenant Shaffer testified that he examined Buckner's uniform and did not notice any dirt or debris on the shirt or pants. (*Id.* at 209). Lieutenant Shaffer identified State's Exhibits 9 through 13 as true and accurate photographs of Buckner's condition as he observed it on the evening of November 26, 2012. (*Id.*).

{¶28} On cross-examination, Lieutenant Shaffer confirmed that the stains on Buckner's uniform were fresh blood stains because the red marks were still wet when he first observed them. (*Id.* at 216). He further testified that Buckner told him that she was riding in the passenger seat of Beaver's car when he reached over and struck her several times. (*Id.* at 221). Lieutenant Shaffer identified Defendant's Exhibit B as his report depicting the November 26, 2012 incident. (*Id.* at 217).

{¶29} Norma Prater ("Prater"), Buckner's mother, testified that she observed Buckner when she arrived at her house on the evening of November 26, 2012. (*Id.* at 229). Prater testified that Buckner was upset when she arrived, was covered in blood, and wanted to call the police. (*Id.* at 230). She testified that she did not think that Buckner was intoxicated when she arrived, but that she "was very upset," "hurt," "angry," and was crying. (*Id.* at 229-230, 234). Prater testified that Buckner wanted her to give Beaver gas money, and when she went out to Beaver's car, "[h]e jumped out of his car. He said: Look, I don't have – there's no blood on me." (*Id.* at 230-231). Prater told Beaver to get into his car and follow her to the gas station, and she put gas in his car. (*Id.*). Prater identified State's Exhibits 14 through 18 as true and accurate photographs of Buckner depicting her "normal" look and how she looked in the days and weeks following the incident. (*Id.* at 236-238).

{¶30} Cassandra Cook ("Cook"), a registered nurse with Marion General Hospital, testified that she saw Buckner when she came to the Marion General Hospital Emergency Room on November 26, 2012. (*Id.* at 253). Cook identified State's Exhibit One as Buckner's November 26, 2012 chart documentation from Marion General Hospital. (*Id.*). Cook testified that she treated Buckner, and Buckner told her that her pain was nine out of ten when she first arrived to the emergency room. (*Id.* at 254, 257). She stated that Buckner sought treatment

because she had been in an "altercation." (*Id.* at 254). Cook further testified that she interacts with intoxicated patients, but, based on her knowledge and experience, she did not smell the odor of alcohol on Buckner or believe her to be intoxicated. (*Id.* at 260-261). Cook identified State's Exhibits 19 through 21 as photographs she took of Buckner, which truly and accurately reflected Buckner's injuries as they appeared on the evening of November 26, 2012. (*Id.* at 258-259). On cross-examination, Cook testified that, even though the historical notes included in State's Exhibit One indicated that Buckner told the triage nurse that she had been drinking, Cook did not have a chance to review the notes prior to treating Buckner and did not believe Buckner was intoxicated based on her interaction with her. (*Id.* at 263-264). She also testified that she did not have the kind of training that would provide her knowledge to testify as to what might have caused Buckner's injuries. (*Id.* at 266).

{¶31} Kristina Roberts ("Roberts"), a nurse practitioner with Marion General Hospital, testified that she also treated Buckner on the evening of November 26, 2012. (*Id.* at 271, 273). Roberts testified that Buckner came to the emergency room that night because of "an alleged assault with facial injury." (*Id.* at 271). She stated that she saw Buckner after Cook initially assessed her, and confirmed that Buckner's nose was broken. (*Id.* at 273). Roberts also testified, based on her training and experience, that she did not believe Buckner was

intoxicated at the time she treated her. (*Id.* at 276). On cross-examination, Roberts described Buckner's forehead as swollen and as having bruising and abrasions to the bridge of her nose. (*Id.* at 281). She indicated that Buckner's injures were located on the top of her nose and on the right side of her forehead extending to her brow. (*Id.*). On re-direct examination, Roberts testified that the abrasion injuries Buckner sustained are common injuries when someone is hit, or assaulted, in the nose. (*Id.* at 282-283).

{¶32} Deputy Nawman testified that she interviewed Buckner after she was seen at Marion General Hospital. (*Id.* 286). She said, "My initial impression of her was that she was agitated and upset * * *." (*Id.* at 288). Deputy Nawman testified that she heard Buckner's testimony and that it was consistent with the narrative she prepared after meeting with Buckner on the night of the incident. (*Id.* at 290). Deputy Nawman testified that she did not find any evidence that Buckner caused her injuries to herself. (*Id.* at 292). Deputy Nawman identified State's Exhibit 22 as a photograph she took of Buckner, which truly and accurately reflected Buckner's injuries as they appeared on the night of the incident. (*Id.* at 289).

{¶33} Thereafter, the State moved to admit its exhibits and rested. (*Id.* at 299-307). State's Exhibits One, Six, and Seven were admitted by stipulation. (*Id.*

at 301, 305). State's Exhibits Two, Three, and Four[1] were excluded. (*Id.* at 301-304). (*See also* July 11, 2013 Tr. at 15-19).[2] State's Exhibit Five was admitted over the defense's objection. (*Id.* at 304-305). State's Exhibits 9 through 22 were admitted without objection. (*Id.* at 306-307). Next, Beaver made a Crim.R. 29(A) motion, which the trial court denied as to Counts One and Four of the indictment and granted as to Count Three of the indictment. (*Id.* at 314-322).

{¶34} The next day, Beaver presented the testimony of one witness, Cory Hamilton ("Hamilton"), the Union County Prosecutor's Office's Victims of Crime Assistance Program ("VOCA") advocate. (July 11, 2013 Pre-Day 2 Tr. at 5-6). Hamilton testified that she initially made contact with Buckner on November 28, 2012, and thereafter made contact with her approximately five times after attempting to contact her more than "a dozen" times. (*Id.* at 7). Further, she testified that Buckner did not tell her that the accusations against Beaver were lies or that she did not want Beaver to be prosecuted. (July 11, 2013 Tr. at 4-5). Moreover, she testified that the Union County Prosecutor's Office had to arrest Buckner to ensure that she would testify because she was a material witness. (*Id.*

---

[1] The record reflects that the State did not offer State's Exhibit Four at the conclusion of its case-in-chief because the trial court excluded State's Exhibits Two and Three, and the State reasoned that State's Exhibit Four would be excluded for the same reason. (July 10, 2013 Tr., Vol. II, at 304). Beaver did not object to State's Exhibit Four. (*Id.*). The next day, the trial court noted that Beaver "wanted to admit Exhibit 4." (July 11, 2013 Tr. at 17).
[2] The record reflects that the trial court initially excluded State's Exhibits Two, Three, and Four pursuant to Evid.R. 803(5). (July 10, 2013 Tr., Vol. II, at 301-304). The next day, the trial court clarified that it improperly excluded State's Exhibits Two, Three, and Four under Evid.R. 803(5), and excluded the exhibits under Evid.R. 801(D)(1)(A), (B). (July 11, 2013 Tr. at 15-19).

at 7). On cross-examination, Hamilton testified that Buckner did not deny that Beaver assaulted her and broke her nose and that she remained consistent as to what happened on November 26, 2012. (*Id.* at 10, 12).

**{¶35}** Thereafter, the defense moved to admit Defendant's Exhibits A and B, which were not admitted, and rested. (*Id.* at 14-18). The State did not present any witnesses on rebuttal, and the matter was submitted to the jury, which found Beaver guilty as to Count One not guilty as to Count Four. (*Id.* at 19, 65, 70-71).

**{¶36}** We first review the sufficiency of the evidence supporting Beaver's felonious-assault conviction. *State v. Velez*, 3d Dist. Putnam No. 12-13-10, 2014-Ohio-1788, ¶ 68, citing *State v. Wimmer*, 3d Dist. Marion No. 9-98-46, 1999 WL 355190, *1 (Mar. 26, 1999). Beaver argues that the State did not prove beyond a reasonable doubt that he caused Buckner's injuries because it did not produce corroborating evidence of Buckner's version of events. However, Beaver's argument is erroneous because the statute does not require corroborating evidence for a felonious-assault conviction. *See* R.C. 2903.11. *See also State v. Gibson*, 5th Dist. Stark No. 2013CA00175, 2014-Ohio-1169, ¶ 36-37 (victim's testimony alone is sufficient to support felonious-assault and abduction convictions). Rather, the credibility and weight of the evidence are primarily for the trier-of-fact—in this case, the jury. *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, ¶ 106, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967),

paragraph one of the syllabus. In assessing the sufficiency of the evidence, we do not resolve evidentiary conflicts or assess the credibility of witnesses; rather, we determine if any rational trier of fact could have found the essential elements of felonious assault beyond a reasonable doubt when viewing the evidence in a light most favorable to the prosecution. *Jenks*, 61 Ohio St.3d 259, at paragraph two of the syllabus; *Jones*, 2013-Ohio-4775, at ¶ 33. There was sufficient evidence supporting each element of felonious assault.

{¶37} Here, the testimony of the victim, law enforcement officers, medical professionals, and the VOCA advocate amounted to sufficient evidence that Beaver committed felonious assault. Buckner testified that Beaver punched her in the face two or three times after they left the Honda parking lot. (July 10, 2013 Tr., Vol. I, at 105-106). Lieutenant Shaffer and Deputy Nawman testified that they interviewed Buckner shortly after the incident and she told them that Beaver punched her in the face after they left the Honda parking lot while they were arguing. (July 10, 2013 Tr. Vol. II at 200, 221, 290). Likewise, Hamilton testified that Buckner did not deny that Beaver assaulted her and broke her nose and that she remained consistent as to what happened on November 26, 2012. (July 11, 2013 Tr. at 10, 12). The testimony of Lieutenant Shaffer, Deputy Nawman, and Hamilton supports Buckner's version of events. Buckner also told the medical personnel at Marion General Hospital that she was assaulted when she sought

treatment for her injuries. (*See* State's Ex. 1); (July 10, 2013 Tr., Vol. II, at 254, 271). Punching someone in the face satisfies the requisite culpable mental state for felonious assault—that is, Beaver was aware that punching Buckner in the face would probably cause her serious physical harm. *See* R.C. 2901.22(B). *See also State v. Higgins*, 9th Dist. Summit No. 26120, 2012-Ohio-5650, ¶ 19 ("[F]or the law to hold him to have acted 'knowingly,' it is only necessary that the serious physical harm is a 'reasonable and probable' result of his action."), quoting *State v. Powell*, 11th Dist. Lake No. 2007-L-187, 2009-Ohio-2822, ¶ 52.

{¶38} Next, the physical evidence in the record supports that Beaver caused serious physical harm to Buckner. (*See* State's Exs. 1, 6-7, 9-22). Beaver broke Buckner's nose and caused it to bleed profusely. (*See* State's Exs. 1, 6-7); (July 10, 2013 Tr., Vol. I, at 107, 120); (July 10, 2013 Tr., Vol. II, at 198, 273). As a result of her injuries, Buckner suffered significant bruising and swelling to her face as evidenced by the numerous photographs, which were admitted into evidence. (*See* State's Exs. 9-22); (July 10, 2013 Tr., Vol., I at 121); (July 10, 2013 Tr., Vol. II, at 199, 236-238, 258-259, 281, 289). Buckner's injuries caused her to seek medical treatment, and ultimately required surgery. (*See* State's Ex. 1); (July 10, 2013 Tr., Vol. I, at 120). Serious physical harm includes any physical harm "that involves some temporary, serious disfigurement," or "physical harm that involves acute pain of such duration as to result in substantial suffering or that

involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(d), (e). Buckner described her injuries as "awful" and testified that she was continuing to experience discomfort from her injuries at the time of the trial. (July 10, 2013 Tr., Vol. I, at 121); *State v. Lawson*, 3d Dist. Union No. 14-06-13, 2006-Ohio-5160, ¶ 27 (concluding that the jury did not lose its way in finding that two months of persistent pain constituted either "acute pain of such duration as to result in substantial suffering" or "any degree of prolonged or intractable pain" under R.C. 2901.01(A)(5)(e)). Cook testified that Buckner rated her pain as a nine out of ten when she first sought medical treatment for her injuries. (July 10, 2013 Tr., Vol. II, at 257). Likewise, the jury saw photographs of Buckner before, right after, and in the days and weeks following the incident that depicted the swelling and bruising Buckner experienced to her face. (*See* State's Exs. 9-22); *State v. Stover*, 3d Dist. Union No. 14-12-24, 2013-Ohio-5665, ¶ 44 (finding that the victim suffered serious physical harm under R.C. 2901.01(A)(5)(d) because his "face was extremely bruised and swollen"). Accordingly, a jury could reasonably find that Buckner suffered some temporary, serious disfigurement, or a duration of acute pain that resulted in substantial suffering or any degree of prolonged intractable pain.

{¶39} Viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Beaver

knowingly caused serious physical harm to Buckner, and therefore, committed felonious assault.

**{¶40}** Having concluded that Beaver's conviction was based on sufficient evidence, we next address Beaver's argument that his conviction was against the manifest weight of the evidence. *Velez*, 2014-Ohio-1788, at ¶ 76. As we summarized in our discussion of the sufficiency of the evidence above, Buckner testified that Beaver struck her in the face multiple times breaking her nose, and the law enforcement officers' and the VOCA advocate's testimony complemented Buckner's testimony. Also, as we summarized above, there was ample evidence documenting the extent of Buckner's injuries. Prater testified that Buckner was crying and very upset, and Lieutenant Shaffer and Deputy Nawman described her as upset and angry or agitated after the November 26, 2012 incident.

**{¶41}** Beaver attempted to discredit Buckner's version of the events of November 26, 2012. As such, on appeal, Beaver argues that Buckner caused the injuries to herself because she was intoxicated and ran into the car door and argues that she lied that Beaver caused her injuries because she was angry with him for ending their relationship.

**{¶42}** There is no evidence that Buckner caused her injuries because she was intoxicated or that she fabricated her story. First, while the evidence in the record demonstrates that Buckner had been drinking that day, the evidence does

not demonstrate that she was intoxicated—that is, the evidence in the record does not show that she was so inebriated that she was unsteady on her feet or unable to control her faculties, i.e. running into a car door. Rather, Buckner testified that she was not intoxicated, and the law enforcement officers, medical personnel, and Buckner's mother also testified that she did not appear to be intoxicated. (July 10, 2013 Tr., Vol. I, at 118, 119); (July 10, 2013 Tr., Vol. II, at 202-203, 234, 260-261, 276).

{¶43} Second, although Buckner admittedly lied in the March 11, 2013 affidavit stating that she was not clear about what happened on November 26, 2012 and that she may have hit her head on the car door, she indicated that she lied in the affidavit because she felt sorry for Beaver and still loved him. (July 10, 2013 Tr., Vol. I, at 122-124). Nevertheless, Beaver argues that the evidence that Buckner hit her head on the car door outweighed the evidence that he struck her. However, the only evidence in the record that Buckner hit her head on the car door is her statement in the March 11, 2013 affidavit. Instead, the evidence in the record indicates that Beaver told Lieutenant Brown that Buckner tripped and fell down in the Honda parking lot. (July 10, 2013 Tr., Vol. II, at 193). The jury very well may have viewed the contradiction in Beaver's statement to Lieutenant Brown and Buckner's affidavit as creating an inconsistency and instead gave more weight to Buckner's trial testimony. In addition, Lieutenant Shaffer testified that

he examined Buckner's clothing and did not note any dirt or debris that would have been consistent with a fall. (*Id.* at 209). Indeed, while Buckner testified that she still loved Beaver and did not want to testify against him, she testified that her story was not fabricated. (July 10, 2013 Tr. Vol. I at 170-172).

{¶44} Accordingly, Beaver's argument that Buckner fabricated her story and caused her injuries to herself because she was intoxicated was underwhelming compared to the evidence that Beaver committed felonious assault.

{¶45} After weighing the evidence and evaluating the credibility of the witnesses, with appropriate deference to the jury's credibility determination, we cannot conclude that the jury, as the trier of fact, clearly lost its way and created a manifest injustice. As such, we are not persuaded that Beaver's felonious-assault conviction must be reversed and a new trial ordered.

{¶46} For these reasons, Beaver's first assignment of error is overruled.

**Assignment of Error No. II**

**The trial court erred when it granted the State's motion to make Krista Buckner a material witness which was prejudicial to appellant.**

{¶47} In his second assignment of error, Beaver argues that the trial court erred in designating Buckner as a court's witness.[3] Specifically, Beaver argues

---

[3] We note that Beaver argues that the trial court erred in declaring Buckner a *material* witness; however, it appears that Beaver intended to argue that the trial court erred in declaring Buckner a *court's* witness. (*See* Appellant's Brief at 11-15). The material-witness standard applies to the State's ability to obtain an arrest warrant for a witness who is material to the case, and whose detention is necessary to procure their

that he was prejudiced by Buckner being called as a court's witness because it allowed the State to conduct its direct examination of her using leading questions, and put more weight on her testimony in the eyes of the jury.

{¶48} Under Evid.R. 614(A), "[t]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." The purpose of calling a witness as a court's witness is to allow for a proper determination in a case where a witness is reluctant or unwilling to testify, or there is some indication that the witness's trial testimony will contradict a prior statement made to police. *State v. Renner*, 2d Dist. Montgomery No. 25514, 2013-Ohio-5463, ¶ 23, citing *State v. Curry*, 8th Dist. Cuyahoga No. 89075, 2007-Ohio-5721, ¶ 18; *State v. Arnold*, 189 Ohio App.3d 507, 2010-Ohio-5379, ¶ 44 (2d Dist.). "The prime candidate is a victim and an eyewitness who will not otherwise cooperate with the party originally planning to call him." *Renner* at ¶ 23, citing *Curry* at ¶ 18.

{¶49} The trial court's decision to call a witness under Evid.R. 614(A) is within the trial court's discretion and will not be reversed absent an abuse of discretion. *Id.,* citing *State v. Croom*, 2d Dist. Montgomery No. 25094, 2013-

---

attendance at trial. *State ex rel. Dorsey v. Haines*, 63 Ohio App.3d 580, 582 (2d Dist.1991). Conversely, a witness may be declared a court's witness when the witness's testimony is beneficial to ascertaining the truth of the matter and there is some indication that the witness's trial testimony will contradict a prior statement, or that there is some indication that the witness refuses to, or is reluctant to, testify. *State v. Arnold*, 189 Ohio App.3d 507, 2010-Ohio-5379, ¶ 44 (2d Dist.); *State v. Renner*, 2d Dist. Montgomery No. 25514, 2013-Ohio-5463, ¶ 23, citing *State v. Curry*, 8th Dist. Cuyahoga No. 89075, 2007-Ohio-5721, ¶ 18. Beaver does not argue in his brief that the trial court erred in issuing a warrant for Buckner's arrest as a material witness and subsequently detaining her to ensure her attendance at trial.

Ohio-3377, ¶ 74, citing *State v. Jones*, 2d Dist, Montgomery No, 14731, 1996 WL 38940. *4 (Jan. 31, 1996). "The term 'abuse of discretion' connotes more than an error or law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *State v. Apanovitch*, 33 Ohio St.3d 19, 22 (1987), citing *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶50} Evid.R. 614(C) requires that objections to the trial court's calling of a witness be made either at the time of the calling or shortly thereafter. Beaver did not object to the trial court's calling of Buckner as its witness. He filed no written opposition to the State's motion, nor did his trial counsel orally contest the calling of Buckner. As such, Beaver waived appellate review of this issue. *See State v. May*, 3d Dist. Logan No. 8-11-19, 2012-Ohio-5128, ¶ 64, citing *State v. Davis*, 79 Ohio App.3d 450, 455 (4th Dist.1992) and *State v. Brown*, 11th Dist. Trumbull No. 2001-T-0146, 2003-Ohio-2364, ¶ 38-39.

{¶51} Even assuming Beaver did not waive this issue, the trial court did not abuse its discretion in declaring Buckner its witness. Buckner's testimony was essential to determining the case against Beaver, she was unwilling or reluctant to testify, and there was some evidence that she would contradict her prior statements made to law enforcement officers. In particular, the State was unsuccessful in its attempts to subpoena Buckner, was unable to contact her, and believed she did not want to testify against Beaver based on a letter she wrote to Beaver, in which she

stated, "I told Cory Hamilton I will not testify against you." (Defendant's Ex. A). Likewise, the affidavit that Buckner provided to Beaver's counsel stating that she was unclear about the events of November 26, 2012 and that she may have hit her head on the car door contradicted her original statements that Beaver struck her. (July 10, 2013 Tr., Vol. I, at 124). At trial, Buckner affirmed her unwillingness to testify and said that she would not have testified if the trial court had not ordered her arrest. (*Id.* at 171).

{¶52} We also note that Beaver's argument that he was prejudiced by Buckner being declared a court's witness is erroneous. In fact, when Buckner was initially called to testify, she was called as if she were the State's witness. (July 10, 2013 Tr. Vol. I at 99). *See also State v. Ross*, 10th Dist. Franklin No. 93AP-1017, 1993 WL 538305, *2 (the jury was not informed that the witness was a court's witness because she was called as if she were the State's witness). When a witness is designated a court's witness, both parties are permitted to cross-examine the witness—that is, both parties may ask the witness leading questions. *See* Evid.R. 614(A). *See also State v. Webb*, 70 Ohio St.3d 325, 340-341 (1994) (finding that it is unnecessary to conclude that the State would be entitled to ask leading questions on direct examination for the court to be able to call the witness as a court's witness at the State's request). Nonetheless, Beaver did not provide any argument relative to how he was prejudiced by the State being permitted to

ask Buckner leading questions, and we decline to make an argument for him on appeal. *State v. Fisher*, 3d Dist. Hardin No. 6-13-03, 2014-Ohio-436, ¶ 7, fn. 1, citing App.R. 12(A)(2); App.R. 16(A)(7).

**{¶53}** Therefore, Beaver's second assignment of error is overruled.

### Assignment of Error No. III

**The trial court erred when it denied appellant's counsel the ability to question the victim on a letter she sent to appellant while he was in jail.**

**{¶54}** In his third assignment of error, Beaver argues that the trial court erred in denying his trial counsel the ability to question Buckner about the letter she sent to Beaver while he was in jail. We find this assignment of error to be without merit because the trial court did not make a ruling that prevented Beaver's trial counsel from questioning Buckner about the letter she sent to Beaver. *See Dailey v. R & J Commercial Contracting*, 10th Dist. Franklin No. 01AP-1464, 2002-Ohio-4724, ¶ 17 ("Assignments of error should designate specific rulings which the appellant wishes to challenge on appeal."), quoting *Taylor v. Franklin Blvd. Nursing Home, Inc.*, 112 Ohio App.3d 27, 32 (8th Dist.1996).

**{¶55}** The transcript of the hearing reveals the following exchange regarding the letter:

[Beaver's Counsel]: Ms. Buckner, I'm going to hand to you what's been marked as Defendant's Exhibit A. Can you identify what that document is?

[Buckner]: It's a letter.

[Beaver's Counsel]: And it's a letter from – to whom from whom?

[Buckner]: To Devven from me.

[Beaver's Counsel]: Okay. Do you recall – did you – can you review that letter? Do you recall writing that letter?

[Buckner]: Yeah.

[Beaver's Counsel]: Okay. And at what point – when did you send that to him?

[Buckner]: I don't know.

[Beaver's Counsel]: Okay. In that letter, don't you indicate that the events of November 26th of 2012 that, in fact, you had not told the truth to the police and others about what happened that night?

[Buckner]: I – I talked to Ms. Hamilton about the charges. I called her and asked her. I said those are not correct, so –

[Beaver's Counsel]: We're not going to get to that. I'm talking about the letter here.

[Buckner]: Yeah. That's what I said in here, isn't it?

[Beaver's Counsel]: Are you familiar with the contents of the letter? Do you need some time to read it?

[Buckner]: No. I know what it says.

[Beaver's Counsel]: Okay. And, in fact, within that letter to Mr. Beaver, you acknowledge that you had lied to people about what had happened, correct?

[Buckner]: This is – no.

[Trial Court]: Counsel approach.

(Thereupon, the following bench conference was held.)

[Trial Court]: That's not what this says.

[The State's Counsel]: That's not what it says either.

[Beaver's Counsel]: (Inaudible.)

[Trial Court]: (Inaudible) possible interpretation of that.

[The State's Counsel]: Right.

[Trial Court]:            No possible interpretation of that.

[The State's Counsel]:   I just got done reading it.

[Trial Court]:            (Inaudible.)

[The State's Counsel]:   It sounds like – it sounds like they are lying.

That's what – I just got done reading it, but

that's –

[Trial Court]:            That's the third time you referred to it that

way.

[Beaver's Counsel]:     I'm sorry?

[Trial Court]:            That's the third time that you referred to it

that way and there's no possible

interpretation that that's a correct

interpretation.

[Beaver's Counsel]:     Thank you.

(Thereupon, the bench conference was concluded.)

[Beaver's Counsel]:     At what point did you decide to go to your

mother's house instead of going to work that

day?

(July 10, 2013 Tr., Vol. I, at 137-139).

Case No. 14-13-15

{¶56} The trial court, outside of the hearing of the jury, articulated to Beaver's counsel that he was mischaracterizing Buckner's letter. The State did not object to Beaver's trial counsel's line of questioning, nor did the trial court make a ruling prohibiting Beaver's trial counsel from continuing to question Buckner about the letter. Instead, Beaver's trial counsel discontinued his line of questioning on his own accord as it related to the letter.

{¶57} Because the trial court did not make a ruling preventing Beaver's trial counsel from questioning Buckner about the letter, we need not address Beaver's assignment of error. *Dailey* at ¶ 17. *See also* App.R. 12(A)(2); App.R. 16(A)(7). Accordingly, Beaver's third assignment of error is overruled.

### Assignment of Error No. IV

**Appellant was deprived effective assistance of counsel thereby depriving appellant a fair trial.**

{¶58} In his fourth assignment of error, Beaver argues that he was deprived the effective assistance of trial counsel. In particular, Beaver argues that his trial counsel failed to object to the trial court's ruling during his cross-examination of Buckner regarding the letter she sent to Beaver, failed to file any responsive pleading to the State's motion requesting Buckner to be declared a court's witness, and failed to attempt to admit State's Exhibit Four and Defendant's Exhibit A.

{¶59} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under

-32-

the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-42 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976).

{¶60} First, Beaver argues that his trial counsel's performance was deficient because he failed to object to the trial court's ruling during his cross-examination of Buckner regarding the letter she sent to Beaver. Based on our determination in Beaver's third assignment of error, Beaver's argument here is likewise without merit—that is, the trial court made no ruling to which Beaver's trial counsel could object. Rather, the trial court, outside of the jury's hearing, advised Beaver's trial counsel that he mischaracterized the letter, and Beaver's

-33-

trial counsel chose to discontinue his line of questioning regarding the letter and move on to another topic.

**{¶61}** Even if the trial court made a ruling regarding Beaver's trial counsel's questioning of Buckner regarding the letter she sent to Beaver, Beaver's argument still fails. The "failure to make objections is within the realm of the trial tactics and does not establish ineffective assistance of counsel." *State v. Ray*, 3d Dist. Union No. 14-05-39, 2006-Ohio-5640, ¶ 63, citing *State v. Lockett*, 49 Ohio St.2d 48 (1976), paragraph nine of the syllabus, *rev'd on other grounds, sub nom. Lockett v. Ohio*, 438 U.S. 586 (1978). "Because 'objections tend to disrupt the flow of a trial, [and] are considered technical and bothersome by the fact-finder,' * * * competent counsel may reasonably hesitate to object in the jury's presence.'" *State v. Hartman*, 93 Ohio St.3d 274, 296 (2001), quoting *State v. Campbell*, 69 Ohio St.3d 38, 53 (1994).

**{¶62}** Beaver's trial counsel was not ineffective for failing to object to the trial court's admonishment for mischaracterizing the letter Buckner wrote to Beaver.

**{¶63}** Next, Beaver's argument that his trial counsel was ineffective because he failed to file any "responsive pleading"[4] to the State's motion

---

[4] "A motion is not a pleading." *State ex rel. Holder v. Deweese*, 5th Dist. Richland No. 14CA02, 2014-Ohio-2753, ¶ 7. Nor is a memorandum in opposition to a motion a pleading. *Turner v. Salvagnini America, Inc.*, 12th Dist. Butler No. CA2007-09-233, 2008-Ohio-3596, ¶ 25, fn. 4, citing *Dane v. Kirsh*, 2d Dist. Montgomery No. CA 9069, 1985 WL 7865, *2 (Mar. 20, 1985).

requesting Buckner be declared a court's witness is also without merit. The failure to file a motion is not per se ineffective assistance of counsel. *State v. Schlosser*, 3d Dist. Union No. 14-10-30, 2011-Ohio-4183, ¶ 34, citing *In re Smith*, 3d Dist. Hancock No. 5-01-34, 2002 WL 255126, *6 (Feb. 22, 2002). "Without proving that trial counsel was deficient for failing to make certain motions and that those motions had a reasonable probability of success, the ineffective assistance of counsel claim fails." *Id.*

**{¶64}** Here, Beaver failed to demonstrate that his trial counsel was deficient for failing to file a response or that such a response would have been successful. First, the only argument in support of his claim that his trial counsel was deficient for failing to file a response is that it cannot be considered trial strategy to fail to file written opposition to the State's motion requesting the victim be declared a court's witness. However, Beaver provides no support for his argument. As such, "this Court is left with nothing other than conjecture to evaluate his contention." *Id.* at ¶ 36. Because Beaver's argument fails for this reason, we need not determine whether a response would have had a reasonable probability of success. *See Keeton*, 2008-Ohio-2613, at ¶ 38. However, even though we need not address whether a response would have had a reasonable probability of success, we note that Beaver provides no argument regarding that issue. But, as we determined in Beaver's second assignment of error, the trial court did not err in granting the

State's motion declaring Buckner a court's witness. As such, Beaver cannot show a response to the State's motion would have had a reasonable probability of success. Therefore, we conclude that Beaver's allegation of ineffective assistance of counsel for failure to oppose the State's motion requesting Buckner be declared a court's witness is meritless.

**{¶65}** Third, Beaver argues that his trial counsel was ineffective because he failed to proffer State's Exhibit Four and Defendant's Exhibit A. We decline to address Beaver's assertion because he did not provide any argument relative to how he was prejudiced or how his trial counsel was deficient in failing to proffer State's Exhibit Four and Defendant's Exhibit A. *State v. Raber*, 189 Ohio App.3d 396, 2010-Ohio-4066, ¶ 30 ("[I]f an argument exists that can support [an] assignment of error, it is not this [c]ourt's duty to root it out."). *See also* App.R. 12(A)(2); App.R. 16(A)(7).

**{¶66}** For these reasons, Beaver's fourth assignment of error is overruled.

**{¶67}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and ROGERS, J., concur.**

**/jlr**