[Cite as *State v. Schwegmann*, 2018-Ohio-3757.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180053 |
| | | TRIAL NO. 17CRB-10871 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| RYAN SCHWEGMANN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: September 19, 2018

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, *Joshua Thompson*, Assistant Public Defender, and *Demetra Stamatakos*, Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Judge.**

{¶1} Defendant-appellant Ryan Schwegmann appeals his conviction, following a bench trial, for domestic violence in violation of R.C. 2919.25(A). In two assignments of error, he argues that the trial court abused its discretion in preventing Schwegmann from cross-examining the victim about her prior threat to file a false domestic-violence charge, and that his conviction was not supported by sufficient evidence. Finding no merit to his arguments, we affirm the trial court's judgment.

*Factual Background*

{¶2} On April 22, 2017, Ryan Schwegmann and Faith Thomas were lying in bed, and Schwegmann began insulting and belittling her. Thomas testified that she told him to leave the home, and he lit her hair on fire. After she ran into the bathroom to extinguish the fire, he followed her, put his hands over her mouth, grabbed her, threw her on the bed, and hit her in the face and head. Then he threw her on the ground, hit her in the lower back, put his hands over her mouth to stop her from screaming, and put his fingers down her throat.

{¶3} She escaped and told her daughter to call 911. Schwegmann told his daughter, who was spending the night, that Thomas had head-butted him and injured her face. Schwegmann left the home, and Thomas spoke with the police.

{¶4} Thomas testified that she had dated Schwegmann for six months, and that he had lived with her for a month. She further testified that he stayed overnight, every night, and had moved most of his belongings into her home. Frequently, his

daughter would come to their home to visit, and she would occasionally spend the night.

{¶5} On cross-examination, she testified that Schwegmann had previously lived with his mother. She did not know whether he was paying for the home in which his mother resided. When asked specifically if Schwegmann had another home with his mother, she testified that he was living with her and staying with her every night. She was the sole tenant on the apartment lease, and all of the utilities were in her name because she had been living in the home for over a year when Schwegmann moved in with her. None of the finances were in his name.

{¶6} Then Thomas was asked if she would call the police and falsely accuse someone of domestic violence, and she responded that she would never do that. She was asked if she had ever threatened to call the police and make a false accusation. The state objected to the question.

{¶7} Schwegmann's counsel stated that he had obtained a recording from Michael Powell, who had dated Thomas after Schwegmann. Counsel further proffered that the recording was of Powell telling Thomas that he was afraid that she would call the police and falsely accuse him of hurting her. Thomas responded, "I threatened you with that at the beginning of this relationship." Although counsel did not know the exact date that the recording was made, he informed the court that the audiotape was recorded after her relationship with Schwegmann had ended. The trial court sustained the objection because the audiotape was not relevant to the charge against Schwegmann.

{¶8} Officer Eric Robinson of the Norwood Police Department testified that he responded to the 911 call and took photographs of the injuries. When he arrived,

Thomas was crying, short of breath, had urinated on herself, and was very emotional and hard to understand. Robinson also testified that it appeared that there was a struggle in the apartment. Robinson was wearing a body camera that evening. The footage from the camera, the 911 call, and the photos of the injuries were admitted into evidence.

{¶9} The trial court found Schwegmann guilty because it determined that Thomas's testimony was credible, believable, and corroborated by the officer's testimony, the 911 call, the body cam video, and the photographs.

### *Limitation on Cross-examination*

{¶10} In his first assignment of error, Schwegmann argues that the trial court abused its discretion in preventing him from cross-examining the victim about prior threats to falsely accuse a person of domestic violence. "The limitation of * * * cross-examination lies within the sound discretion of the trial court, viewed in relation to the particular facts of the case. Such exercise of discretion will not be disturbed in the absence of a clear showing of an abuse of discretion." *State v. Acre*, 6 Ohio St.3d 140, 145, 451 N.E.2d 802 (1983). An abuse of discretion is more than a mere error in judgment; it suggests that the court acted in an unreasonable, arbitrary, or unconscionable manner. *State v. Adams*, 62 Ohio St.2d 151, 157-158, 404 N.E.2d 144 (1980).

{¶11} Under Evid.R. 608(B), a defendant is permitted to cross-examine a victim regarding false accusations if they are clearly probative of truthfulness or untruthfulness. *State v. Husseln*, 1st Dist. Hamilton No. C-020155, 2003-Ohio-1369, ¶ 8, citing *State v. Boggs*, 63 Ohio St.3d 418, 421, 588 N.E.2d 813 (1992). In addition, evidence of a prior false accusation is admissible under Evid.R. 616(A) to

show the victim's bias, prejudice, interest, or motive for misrepresentation. *Husseln* at ¶ 9. Prior false accusations are clearly probative when the false accusation was against the defendant. *See State v. Messenger*, 3d Dist. Marion No. 9-09-19, 2010-Ohio-479, ¶ 52.

{¶12} Here, Thomas repeatedly testified that she had not called the police and made any false accusations against any person, including Schwegmann. If Schwegmann had obtained proof that she had made false accusations of domestic violence against him to the police, it may have been probative of truthfulness and admissible to show bias, prejudice, interest, or a motive for misrepresentation. *See id.*

{¶13} However, Schwegmann sought to cross-examine Thomas regarding a threat made to make a false accusation of domestic violence against Powell. An alleged threat that did not involve Schwegmann is not clearly probative, especially in light of Thomas's testimony that she had not made any false accusations against Schwegmann or anyone else. We cannot find that the trial court abused its discretion by not allowing the cross-examination.

{¶14} Accordingly, we overrule the first assignment of error.

### Manifest Weight of the Evidence

{¶15} In his second assignment of error, Schwegmann contends that his conviction was against the manifest weight of the evidence because Thomas's testimony did not satisfy the cohabitation element. Specifically, he argues that the record established that he had another residence that he shared with his mother despite Thomas's subjective belief that the two were cohabiting.

{¶16}  In determining whether the conviction is against the manifest weight of the evidence, "th[is] court, reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983), quoted in *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶17}  R.C. 2919.25(A) provides: "No person shall knowingly cause or attempt to cause physical harm to a family or household member."  " 'Family or household member' means (a) [a]ny of the following who is residing or has resided with the offender: (i) A spouse, a person living as a spouse, or a former spouse of the offender." R.C. 2919.25(F)(1).  " 'Person living as a spouse' means a person * * * who is cohabiting with the offender." R.C. 2919.25(F)(2).

{¶18}  In enacting the offense of domestic violence, the legislature intended to protect persons from violence by residents of the same home.  *State v. McGlothan*, 138 Ohio St.3d 146, 2014-Ohio-85, 4 N.E.3d 1021, ¶ 17.  Testimony that the victim lived with the accused establishes they shared a residence.  *Id.* at ¶ 15.  Testimony that the defendant was the victim's boyfriend, and that they had lived together, established cohabitation and that the two were living as spouses.  *Id.*

{¶19}  Thomas testified that she had been dating Schwegmann for six months, and that they had been living together for about a month.  She further stated that he stayed overnight every night, and had moved most of his belongings into her home, and that his daughter visited and had spent a few nights with them. When

asked specifically if Schwegmann had another home with his mother, she again stated that he was living with her and staying with her every night.

{¶20} Upon our review of the record, we cannot conclude that the trial court lost its way and created a manifest miscarriage of justice in resolving the factual issues. Thomas repeatedly testified that she and Schwegmann had been dating, he lived with her for a month, and that he had moved most of his belongings into her apartment. No evidence was presented to establish that Schwegmann lived with his mother or had a second home with his mother.

{¶21} Because the record demonstrates that Schwegmann's conviction was not against the weight of the evidence, we overrule the second assignment of error.

### *Conclusion*

{¶22} Having overruled Schwegmann's assignments of error, we accordingly affirm the trial court's judgment.

Judgment affirmed.

MOCK, P.J., concurs.
MYERS, J., concurs separately.

MYERS, J., concurring separately.

{¶23} I write separately because, while I concur in the judgment, I would find that the trial court abused its discretion in not allowing the victim to be cross-examined about whether she threatened to falsely accuse anyone of domestic violence. I would find, however, that the error was harmless, and thus concur in affirming the trial court's judgment.

{¶24} Evid.R. 608(B) permits cross-examination about specific instances of conduct concerning the witness's character for truthfulness or untruthfulness, so long as they are clearly probative of the same. I would find that a threat to make a

false allegation of domestic violence is clearly probative of truthfulness or untruthfulness in a domestic-violence case. Whether extrinsic evidence of such a threat would be admissible is not before us. However, I would find that the court erred in disallowing the question on cross-examination. But because the error was harmless in light of the overwhelming evidence, I would affirm the judgment.

Judgment affirmed.

Please note:
    The court has recorded its own entry on the date of the release of this opinion.