[Cite as *State v. Curry*, 2020-Ohio-1230.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                       :        APPEAL NO. C-190107
                                              TRIAL NO. 18CRB-32470
    Plaintiff-Appellee,          :
                                              *O P I N I O N.*
  vs.                               :

WILLIAM CURRY,                       :

    Defendant-Appellant.         :


Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  March 31, 2020


*Paula Boggs Muething,* City Solicitor, *William T. Horsley*, Interim City Prosecutor, and *Jon Vogt*, Appellate Director, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffman,* Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} Defendant-appellant William Curry appeals his conviction for domestic violence. For the reasons set forth below, we affirm the judgment of the trial court.

*Facts and Procedure*

{¶2} The evidence presented below depicts two largely conflicting versions of events. The following facts, however, are undisputed. At the time of the incident, defendant-appellant William Curry and Dionte Nelson were in a relationship. Curry resided with Nelson at Nelson's house. When Curry returned home from work in the early morning hours of December 17, 2018, he began arguing with Nelson about her children being awake. The argument eventually escalated into a physical altercation that formed the basis of the charges in this case.

{¶3} At trial, Nelson testified that Curry began touching her face during the argument. Nelson stated that Curry was "like brushing my face with his hands." According to Nelson, she asked Curry to stop, but he refused. Nelson testified that she then "pushed him in the face," and "he punched me in my ear." Nelson stated that the punch "hurt. It really hurt." She later noticed blood on her ear.

{¶4} According to Nelson, the situation momentarily mellowed before Curry started asking Nelson for her phone. Nelson testified that, when she refused, Curry tried to grab the phone and the two began wrestling. While they were wrestling, Curry's hand went into Nelson's mouth and she bit his finger. Eventually, Nelson threw the phone and ran to get her children. Nelson testified that Curry then "jumped on top of me, put his knee in my head, and his whole body weight was on my head." Nelson stated, "I felt like my eyes were going to pop out of my head, I couldn't barely breathe, and I felt like I was going to die." From underneath Curry,

Nelson asked her oldest son to go to the neighbors' house and call the police. Nelson testified that when her son opened the front door, Curry released pressure from her head.

{¶5} According to Nelson, she then left the house and waited for the police to arrive. After approximately five to seven minutes, Nelson reentered her house, grabbed her children's shoes and coats, and went to the nearby Taco Bell where she worked. Nelson testified that her coworker saw her and called the police.

{¶6} Officer Nicholas Clark responded to the Taco Bell. According to Clark, he observed "blood coming from [Nelson's] ear. And her clothes looked disheveled. She had some swelling around her neck." Clark called the fire department to render aid to Nelson. Clark then responded to the residence to talk to Curry. Clark observed "some kind of cut or gash on [Curry's] finger." Curry told Clark that "he was protecting himself."

{¶7} Curry testified in his own defense and offered an opposing version of events. Notably, Curry denied poking Nelson in the face, hitting her in the ear, and putting his body weight on her head. According to Curry, "I came home from work about 1:30 in the morning, and when I walked in the house, the house reeked of marijuana." He continued, "[Nelson] was drinking alcohol. She looked drunk and high." Curry then noticed that Nelson's children were awake and confronted Nelson.

{¶8} Curry testified that he eventually asked Nelson for his phone, but Nelson refused.[1] According to Curry, he then "reached down to grab for my phone and she punched me in the face." Curry testified that he "grabbed her hands, and as I was holding her hands * * * she pulled her hands to me and bit me on my finger."

---

[1] It is unclear from the testimony whether Curry's phone was in Nelson's hand or lying somewhere near Nelson.

Curry stated that Nelson "bit really hard on my finger. My finger split open." Curry testified that he then told Nelson he "was going to file for temporary custody of the kids" and Nelson grabbed her children and left the house.

{¶9} Following a bench trial, Curry was found guilty of domestic violence in violation of R.C. 2925.19(A) and assault in violation of R.C. 2903.13. The state elected to proceed on the domestic-violence charge. The trial court sentenced Curry to 90 days in jail, with 68 days suspended and 22 days credited, and a six-month period of probation. The court also imposed a $150 fine and a no-contact order.

### Law and Analysis

{¶10} In his sole assignment of error, Curry challenges the weight and sufficiency of the evidence supporting his conviction for domestic violence.

#### I.    Sufficiency of the Evidence

{¶11} To determine whether a conviction is supported by sufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 274, 574 N.E.2d 492 (1991).

{¶12} Curry was convicted of domestic violence under R.C. 2919.25(A), which provides: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Citing *State v. Williams*, 79 Ohio St.3d 459, 683 N.E.2d 1126 (1997), Curry contends that the evidence was insufficient to establish that a familial or household-member relationship existed between him and Nelson.

{¶13} As relevant to this appeal, "family or household member" means "a person living as a spouse." R.C. 2929.25(F)(1). A "person living as a spouse" includes a person who is "cohabitating with the offender." R.C. 2919.25(F)(2).

4

{¶14} In *State v. Williams*, the Ohio Supreme Court held that "cohabitation" requires (1) the sharing of familial or financial responsibilities and (2) consortium. *Williams* at 465. However, the court revisited its definition of "cohabitation" in *State v. McGlothan*, 138 Ohio St.3d 146, 2014-Ohio-85, 4 N.E.3d 1021, and clarified that "in order to prove cohabitation when the victim and the defendant do *not* share the same residence, evidence of shared financial or familial responsibilities and consortium is required." (Emphasis in original.). *Id.* at ¶ 13.

{¶15} Where the offender and victim *do* share the same residence while in a relationship, the state is not required to demonstrate the sharing of familial or financial responsibilities and consortium. *Id.* at ¶ 15. In those situations, the trial court can reasonably determine that the state established cohabitation. *Id.* Therefore, under *McGlothan*, "cohabitation" also includes situations where the victim and the offender "lived together and were in a relationship from which the domestic violence arose." *Id.* at ¶ 17; *see State v. Schwegmann*, 1st Dist. Hamilton No. C-180053, 2018-Ohio-3757, ¶ 18-19 (finding sufficient evidence of cohabitation where the defendant and the victim had been dating for six months and the defendant lived with the victim for a month prior to the domestic violence).

{¶16} In this case, Nelson testified that she and Curry "were in a relationship" at the time of the incident. Nelson further testified that they shared a residence. Specifically, Nelson stated that Curry had been living with her for a few months. Nelson's testimony on this point was unrefuted. In fact, during his testimony, Curry referred to Nelson's apartment as his "home." Viewing this evidence in a light most favorable to the prosecution, the court could reasonably have found that Curry and Nelson were cohabitating, and thus, were family or household members for purposes of R.C. 2919.25(A).

II.     Manifest Weight of the Evidence

**{¶17}** In reviewing a challenge to the weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Id.*

**{¶18}** Curry's weight-of-the-evidence argument concerns the credibility of the state's witnesses—Nelson and Officer Clark. Curry highlights the inconsistencies within Nelson's testimony to discredit her alleged fear of him. Curry also points to evidence of a two-hour time gap between the incident and the 911 call.

**{¶19}** Inconsistencies in the state's case do not require a reversal on manifest-weight-of-the-evidence grounds. "The trier of fact may believe all, part or none of [a] witness's testimony. * * * And when evidence is susceptible to more than one construction, a reviewing court must give it the interpretation that is consistent with the judgment." (Internal citations omitted.) *In re J.C.,* 1st Dist. Hamilton No. C-180493, 2019-Ohio-4027, ¶ 20. Ultimately, "[t]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

**{¶20}** Here, the trial transcript reflects two different versions of events. Nelson testified that, during an argument with Curry, Curry poked her in the face, punched her in the ear, kneeled on her head, and choked her. Although Curry admitted to arguing and wrestling with Nelson, he denied hitting her in the head and putting his body weight on her head.

**{¶21}** "The credibility of the witnesses is paramount in cases such as this where the evidence amounts to little more than a matter of 'he said, she said.' " *State*

*v. Chasteen*, 12th Dist. Butler No. CA2013-12-223, 2014-Ohio-4622, ¶ 14. In rendering its judgment, the trial court found the testimony of Nelson to be more credible than that of Curry. Officer Clark's testimony was particularly important to the trial court's credibility determination. In its pronouncement of guilt, the court found that Clark, as a third-party disinterested witness, "observed injuries to the prosecuting witness consistent with her statement about what had occurred, and completely contrary to [Curry's] statement about what occurred." Because Clark's testimony supported Nelson's version of events, the court gave additional credibility to Nelson's testimony and found Curry guilty.

{¶22} Based upon the conflicting testimony, and in light of the credibility of the witnesses and Officer Clark's corroborating testimony, this is not a case where the trier of fact clearly lost its way and created such a manifest miscarriage of justice that Curry's conviction must be reversed. *See State v. Warren*, 106 Ohio App.3d 753, 760, 667 N.E.2d 68 (1st Dist.1995) (holding that the manifest weight of the evidence did not require reversal where the evidence consisted primarily of conflicting testimony, and the trier of fact believed the testimony of the victim and the corroborating testimony of the officer that he observed bruises on her neck).

### *Conclusion*

{¶23} For the foregoing reasons, Curry's sole assignment of error is overruled and the judgment of the trial court is affirmed.

Judgment affirmed.

**MYERS, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.