[Cite as *State v. Smith*, 2024-Ohio-886.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

CASE NO. 9-23-04

    v.

STEVEN SCOTT SMITH,

**O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 22-CR-201

**Judgment Affirmed**

**Date of Decision:  March 11, 2024**

APPEARANCES:

    *April F. Campbell* **for Appellant**

    *Raymond A. Grogan, Jr.* **for Appellee**

**MILLER, J.**

{¶1} Defendant-Appellant, Steven Smith ("Smith"), appeals the January 13, 2023 judgment entry issued by the Marion County Court of Common Pleas. Following a two-day trial, a jury found Smith guilty of felonious assault and abduction. The trial court sentenced Smith to an aggregate prison term of 11 to 15 years. For the reasons that follow, we affirm.

## I.    FACTS AND PROCEDURAL HISTORY

{¶2} Smith was indicted by the grand jury on three counts: (1) kidnapping, pursuant to R.C. 2905.01(A)(3), (C)(1); (2) felonious assault, pursuant to R.C. 2903.11(A), (D)(1)(a); and (3) abduction, pursuant to R.C. 2905.02(A)(2), (C). The charges arose from an incident in Marion, Ohio on March 16, 2022. On that date, Marion Police Officer Nick Esterline was dispatched to a residence at 348 Owens Street in response to information that someone had been assaulted and held against his will there. Lieutenant Josh Harris also responded to the residence.

{¶3} Upon arrival, Lieutenant Harris saw Smith coming out the back of 348 Owens Street. He began speaking with Smith, who said Lieutenant Harris could go into the residence. Lieutenant Harris went upstairs and found Cody Frye ("Frye") laying on a bed in a bedroom. He could see bruising on Frye's face, one of Frye's arms was "heavily swollen," his hands were "extremely swollen," and there were

heavy ligature marks on his wrist. (Nov. 29, 2022 Trial Tr. at 73, 76). Lieutenant Harris also found twine in the room.

{¶4} Lieutenant Harris spoke to Frye, who was "very lethargic, slow * * * answering questions, [and had] slow physical movements." (*Id.* at 73, 77). Lieutenant Harris could tell Frye "was in an enormous amount of pain by the way that he was speaking, he was scared and nervous and apprehensive to speak." (*Id.*) Frye told Lieutenant Harris he did not want to talk. Frye initially would not say who had caused his injuries. However, he later confirmed to Lieutenant Harris it was Smith who had done so.

{¶5} Given the severity of the injuries, as well as Frye's indication he thought his leg and arm were broken, Lieutenant Harris called for an ambulance. Dr. Marcus Bear, the emergency physician who treated Frye's multiple injuries, testified that Frye told him he had been assaulted with a baseball bat, which was consistent with Frye's injuries. Additionally, Michael Diem, a detective with the City of Marion Police Department, testified Frye told him Smith had assaulted him with a metal baseball bat.

{¶6} Smith was subsequently arrested and charged through municipal court. A preliminary hearing was held on March 25, 2022 with both Smith and his attorney present. At the preliminary hearing, Frye testified he was at the residence on Owens Street on March 16, 2022 because he was a tattoo artist and went there believing he

was to give someone a tattoo. Frye further testified he was not allowed to leave the residence because Smith said he would hurt him if he tried to leave. Frye also testified Smith beat him, causing three fractures in Frye's right arm, a cracked eye socket, and 20 stitches to his shin. Among other treatment, he needed surgery to have his arm reconstructed. Additionally, Frye testified he was scared for his life and was only freed from the situation by police showing up.

{¶7} The case was bound over to the grand jury, which returned the three-count indictment. The case ultimately proceeded to a jury trial. Frye did not appear for trial. Over Smith's objection, Frye's testimony from the March 25, 2022 preliminary hearing was read to the jury as part of the State's case-in-chief.

{¶8} Additionally, outside the presence of the jury, Smith's counsel proffered the testimony of Marion Police Officer Rob Musser and a narrative written by Officer Andy Isom. The proffered testimony and written narrative related to an incident that occurred on March 15, 2022. In his proffer, Officer Musser testified he went to a home at 430 Fies Avenue in Marion on March 15, 2022, i.e., a different location the day before the incident from which the charges against Smith arose. A caller had told the police his brother, Cody Frye, was being attacked by Smith at that location. Officer Musser saw Smith and Frye when he arrived at the location. Officers could not substantiate that an assault had happened. Officer Musser did not see any injury to Frye, and no witnesses came forward saying that an assault had

occurred. Similarly, the narrative from Officer Isom said he also responded to 430 Fies Avenue and spoke with Frye, who advised he had not been assaulted.

**{¶9}** The trial court sustained the State's objection to admitting Officer Musser's testimony and Officer Isom's narrative on relevancy grounds because they related to a separate incident at a different address on a different date. The trial court found they were not relevant to "whether or not these offenses occurred as charged here." (Nov. 30, 2022 Tr. at 185-186; *see also id.* at 195-196).

**{¶10}** The jury found Smith not guilty of kidnapping, but guilty of felonious assault and abduction. Smith appeared for his sentencing hearing, at which the trial court sentenced him to consecutive prison terms: eight-to-twelve years for the felonious assault conviction and thirty-six months for the abduction conviction. This appeal followed.

## II.  ASSIGNMENTS OF ERROR

**{¶11}** Smith raises five assignments of error for our review:

### First Assignment of Error

**The trial court committed reversible error by admitting the victim's testimony at the preliminary hearing over Smith's objection.**

### Second Assignment of Error

**The trial court committed reversible error by not allowing Smith to introduce evidence of the false accusation made against Smith hours before when it involved the same victim.**

**Third Assignment of Error**

**The State's evidence that Smith committed the offenses was legally insufficient as a matter of law.**

**Fourth Assignment of Error**

**The evidence also weighed manifestly against convicting Smith.**

**Fifth Assignment of Error**

**The trial court erred in failing to merge Smith's offenses together because he had one animus and engaged in one continuing course of conduct.**

## III. DISCUSSION

### A. First Assignment of Error

{¶12} In the first assignment of error, Smith argues Frye's testimony from the preliminary hearing was not admissible because it did not qualify for, or meet the requirements of, Evid.R. 804(B).

#### i. Standard of Review

{¶13} We typically review a trial court's decisions to admit or exclude evidence for an abuse of discretion. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 62. "However, we review de novo evidentiary rulings that implicate the Confrontation Clause." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 97. De novo review is independent, without deference to the lower court's decision. *State v. Azeen*, 163 Ohio St.3d 447, 2021-Ohio-1735, ¶ 59.

### ii. Applicable Law

**{¶14}** "Testimony taken at * * * a preliminary hearing at which the defendant is present * * * may be used whenever the witness giving the testimony * * * cannot for any reason be produced at the trial * * *." R.C. 2945.49(A)(2). However, such prior testimony still may be hearsay or otherwise inadmissible.

**{¶15}** The general rule is that "[h]earsay is not admissible." Evid.R. 802. However, Ohio's Rules of Evidence provide an exception for certain former testimony:

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: (1) *Former Testimony.* Testimony given as a witness at another hearing of the same or a different proceeding * * * if the party against whom the testimony is now offered * * * had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Testimony given at a preliminary hearing must satisfy the right to confrontation and exhibit indicia of reliability.

Evid.R. 804(B)(1). Therefore, for testimony given at an earlier preliminary hearing to qualify for this hearsay exception, the following requirements must be met: (1) it must be testimony given by a witness; (2) at a previous hearing, regardless of whether it is in the same matter; (3) the party against whom the testimony is being offered must have had an opportunity and a similar motive to directly examine or cross-examine the witness; (4) the testimony must satisfy the right to confrontation; (5) there must be indications it is reliable testimony; and (6) the witness must be unavailable. *Id.* Yet, meeting these requirements does not necessarily mean such

testimony will always be admissible because other Rules of Evidence (e.g., Evid.R. 402) may bar its admission.

### iii. Analysis

{¶16} Smith argues that Frye's testimony from the preliminary hearing was not admissible at trial for two reasons. First, according to Smith, "preliminary hearing testimony in a criminal case is not considered 'former testimony' under Evid.R. 804(B)." (Appellant's Brief at 5). However, Smith relies on outdated authority for his argument.

{¶17} The text of Evid.R. 804(B) plainly shows preliminary hearing testimony can be considered former testimony for purposes of the hearsay exception. The rule specifically mentions "[t]estimony given at a preliminary hearing" and additional requirements for such testimony to qualify for admission at a later proceeding. Evid.R. 804(B). It appears Smith's confusion comes from his citation to the rule's initial staff notes from 1980. (*See* Appellant's Brief at 5-6). However, the rule was amended later that same year to delete a clause that had exempted preliminary hearing testimony from the hearsay exception. *See* Katz, Martin, & Macke, *Baldwin's Ohio Practice, Criminal Law*, Section 38:14, at fn. 9 (3d Ed.) ("[a]s originally adopted in 1980, Evid.R. 804(B)(1) excluded preliminary hearing testimony from the former testimony exception. See 62 Ohio St. 2d xlvii (1980). * * * [Later in 1980, in response to the U.S. Supreme Court's reversal of

*State v. Roberts*, 55 Ohio St.2d 191 (1978)], the rule was amended by deleting the clause that exempted preliminary hearing testimony. See 53 Ohio Bar 1218 (1980)."); Weissenberger & Stephani, *Weissenberger's Ohio Evidence Treatise*, Section 804:18, at 229 (2024) ("[a]s originally enacted, Rule 804(B)(1) * * * expressly exclud[ed] testimony taken at a preliminary hearing where offered against the accused," but "the express exclusionary provision against preliminary hearing testimony was eliminated" by amendment).

{¶18} As a second reason in support of his claim that Frye's testimony from the preliminary hearing was not admissible at trial, Smith contends the "testimony did not satisfy Smith's confrontation right, nor did it exhibit indicia of reliability." (Appellant's Brief at 5). To us, Smith challenges only two of the requirements for former testimony at a preliminary hearing to qualify for admission pursuant to the hearsay exception under Evid.R. 804(B)(1).

{¶19} Regarding Smith's confrontation right, the Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." Sixth Amendment to the U.S. Constitution. "[T]his bedrock procedural guarantee applies to both federal and state prosecutions." *Crawford v. Washington*, 541 U.S. 36, 42, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). "If one were to read this language literally, it would require, on objection, the exclusion of any statement made by a declarant

not present at trial." *Ohio v. Roberts*, 448 U.S. 56, 62, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). "But, if thus applied, the Clause would abrogate virtually every hearsay exception, a result long rejected as unintended and too extreme." *Id.*

{¶20} Instead, the Sixth Amendment's Confrontation Clause prohibits an out-of-court statement that is testimonial in nature from being "introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness." *Bullcoming v. New Mexico*, 564 U.S. 647, 657, 131 S.Ct. 2705, 180 L.Ed. 2d 610 (2011); *see also Crawford*, 541 U.S. at 59 (the Confrontation Clause permits admission of "[t]estimonial statements of witnesses absent from trial * * * only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine"). Prior testimony at a preliminary hearing qualifies as an out-of-court statement that is testimonial in nature. *Crawford*, 541 U.S. at 68 (the term 'testimonial' "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations"). In sum, the Confrontation Clause prohibits admission of prior trial or preliminary hearing testimony unless (1) the declarant is unavailable; and (2) the defendant had a prior opportunity to cross-examine the declarant. *Id.* at 59. In contrast to some earlier law, *Crawford* held that the testimony's reliability itself does not dispense with the

requirement that the testimony satisfy the right to confrontation.[1]  *See id.* at 62 ("[d]ispensing with confrontation because testimony is obviously reliable * * * is not what the Sixth Amendment prescribes").

**{¶21}** Here, Smith does not challenge Frye's unavailability and concedes he had a prior opportunity to cross-examine Frye.  In fact, the record supports that Smith's counsel *did* cross-examine Frye at the preliminary hearing.  (State's Exhibit 61; Nov. 29, 2022 Trial Tr. at 128, 132-133).  Thus, admission of Frye's preliminary hearing testimony was not prohibited by the Confrontation Clause.  *State v. Leigh*, 2d Dist. Montgomery No. 28821, 2023-Ohio-91, ¶ 86 (no Confrontation Clause violation when unavailable witness's prior hearing testimony was presented at trial because defendant's attorney was afforded the right to cross-examine the witness at the prior hearing).

**{¶22}** Finally, we address whether Frye's testimony at the preliminary hearing met the requirement that it "exhibit indicia of reliability."  Evid.R. 804(B)(1).  Finding the right to confrontation satisfied is also relevant to whether the testimony exhibits indicia of reliability.  This is because the testimony's

---

[1] Smith does not claim he was entitled to greater or different rights or protections under the Ohio Constitution than the United States Constitution.  Further, the Ohio Supreme Court has said Section 10, Article I of the Ohio Constitution provides no greater right of confrontation than the Sixth Amendment.  *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, ¶ 12; *see also* Ohio Constitution, Article I, Section 10 ("In any trial, in any court, the party accused shall be allowed to * * * meet the witnesses face to face"); *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 110 ("[b]oth the Sixth Amendment Confrontation Clause, and Section 10, Article I of the Ohio Constitution guarantee a criminal defendant the right to cross-examine witnesses who testify against him").

reliability can be tested through cross-examination. *See Crawford*, 541 U.S. at 61 (the Confrontation Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination"). Yet, establishing that the "[t]estimony given at a preliminary hearing * * * exhibit indicia of reliability" remains a stand-alone requirement. Evid.R. 804(B)(1); *Leigh*, 2023-Ohio-91, at ¶ 87 ("[b]ecause testimony may be admissible under the Confrontation Clause yet inadmissible under the rules of evidence, and vice versa, *see Crawford* at 51, 124 S.Ct. 1354, the declarant's statements must fall within the constitutional requirements and the rules of evidence to be admissible").

{¶23} Here, Frye gave sworn testimony under penalty of perjury at the preliminary hearing. The preliminary hearing was conducted in open court and recorded with both Smith and his counsel in attendance. At the preliminary hearing, the State directly examined Frey regarding the assault and Smith's counsel cross-examined him. Additionally, Frye identified Smith as his assailant both to a police officer on the day of the incident and during his preliminary hearing testimony; he never identified anyone else as his assailant. Frye also recalled his injuries, which Dr. Bear corroborated. Consequently, we find Frey's preliminary hearing testimony

met the requirement that it exhibit indicia of reliability.[2]  Evid.R. 804(B)(1); *State v. Sidibeh*, 10th Dist. Franklin No. 10AP-331, 2011-Ohio-712, ¶ 37-38 (finding the reliability of an unavailable witness's prior hearing testimony was properly established because it was provided under oath and subject to cross-examination, and further finding other evidence corroborated the testimony despite appellant's argument to the contrary).

**{¶24}** Having conducted our de novo review, we disagree with Smith's argument that Frye's testimony from the preliminary hearing was inadmissible because it did not qualify for, or meet the requirements of, Evid.R. 804(B).  Smith's first assignment of error is overruled.

### B.    Second Assignment of Error

**{¶25}** In the second assignment of error, Smith relies on Evid.R. 616 to support his contention: "the trial court should have allowed [him] to introduce evidence that [he] was cleared of the false accusation that he had assault[ed] [C]ody [F]rye only hours before the incident for which he was convicted."  (Appellant's Brief at 10).  Smith asserts that denying him "from introducing evidence of this false

---

[2] In support of his argument that Frye's preliminary hearing testimony did not exhibit indicia of reliability, Smith argues Frye admitted to lying on the stand regarding whether he stayed with Smith in the eight days preceding the incident. (Appellant's Brief at 8).  However, Frye did not admit to lying on the stand.  In actuality, Smith's counsel asked Frye if he lived at the Owens Street address; Frye said no; Smith's counsel asked if he denied sleeping on the couch the eight days prior to the incident; Frye said he had slept on the couch for eight days, but had not lived at the residence in over eleven years. (*See* Nov. 29, 2022 Tr. at 132).  Smith also argues he had been falsely accused of committing the same acts the day prior to the incident, as evidenced by the proffered testimony and police report.  However, there is no evidence to support any alleged false accusation was made by Frye.

accusation to the jury, by way of Officer Musser's testimony and Officer Isom's report, was reversible error." (*Id.*).

### i. Standard of Review

{¶26} We review the trial court's decision not to admit the evidence for an abuse of discretion. *State v. Yohey*, 3d Dist. Marion No. 9-95-46, 1996 WL 116144, *8 (Mar. 18, 1996), citing *State v. Graham*, 58 Ohio St.2d 350, 352, 390 N.E.2d 805 (1979) (trial court did not abuse its discretion in not admitting evidence pursuant to Evid.R. 616). An abuse of discretion connotes more than an error of law or judgment; it implies a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

### ii. Applicable Law and Analysis

{¶27} Smith relies on Evid.R. 616 to support his argument. That rule states, in relevant part:

> In addition to other methods, a witness may be impeached by any of the following methods:
>
> (A) Bias. Bias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence.
>
> (B) Sensory or Mental Defect. A defect of capacity, ability, or opportunity to observe, remember, or relate may be shown to impeach the witness either by examination of the witness or by extrinsic evidence.

> (C) Specific Contradiction. Facts contradicting a witness's testimony
> may be shown for the purpose of impeaching the witness's testimony.
> * * *

Evid.R. 616. "[E]vidence of a prior false accusation is admissible under Evid.R. 616(A) to show the victim's bias, prejudice, interest, or motive for misrepresentation." *State v. Schwegmann*, 1st Dist. Hamilton No. C-180053, 2018-Ohio-3757, ¶ 11. Thus, according to Smith, the trial court should have allowed Frye to be impeached through the evidence of the false accusation against Smith shown in Officer Musser's testimony and Officer Isom's report.

**{¶28}** Among other potential issues with this argument is that the false accusation against Smith was not made by Frye. Smith's proffered evidence indicates a caller identifying himself as Frye's brother made the allegation. There is no evidence Frye made the false accusation (and Frye's brother never testified). Thus, because there was no evidence Frye made the accusation, there was no testimony to impeach by specific contradiction. The incident the day prior was irrelevant. Accordingly, pursuant to Evid.R. 616, the trial court did not abuse its discretion in not admitting Officer Musser's testimony and Officer Isom's report regarding the false accusation. *Schwegmann*, 2018-Ohio-3757, at ¶ 12-13 ("[i]f [appellant] had obtained proof that [victim-witness] had made false accusations of domestic violence against him to the police, it may have been probative of

truthfulness and admissible to show bias, prejudice, interest, or a motive for misrepresentation," but there was no such proof).

{¶29} Smith's second assignment of error is overruled.

### C.     Third Assignment of Error

{¶30} In the third assignment of error, Smith argues the State's evidence that he committed the offenses was legally insufficient as a matter of law.  Smith moved for acquittal pursuant to Crim.R. 29 during trial, and the trial court denied the motion.

### i.     Standard of Review

{¶31} "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37, citing *State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965 (1995) and *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  A sufficiency challenge disputes whether a party met its burden of production at trial.  *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, ¶ 26.  "In reviewing a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'"  *Tenace* at ¶ 37, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

Thus, "[i]n assessing the sufficiency of the evidence, we do not resolve evidentiary conflicts or assess the credibility of witnesses." *State v. Jackson*, 3d Dist. Allen No. 1-22-27, 2023-Ohio-2193, ¶ 26; *see also Jenks* at 279.

### ii. Applicable Law

**{¶32}** Smith was convicted of felonious assault in violation of R.C. 2903.11(A)(1). A person violates this prohibition if he or she "knowingly * * * [c]ause[s] serious physical harm to another." R.C. 2903.11(A)(1). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Additionally, "[a] person has knowledge of circumstances when the person is aware that such circumstances probably exist." *Id.* The term "serious physical harm to another" includes, but is not limited to, any of the following:

> (c) Any physical harm that involves * * * some temporary, substantial incapacity;
>
> (d) Any physical harm that involves * * * some temporary, serious disfigurement; [or]
>
> (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5)(c), (d), (e).

**{¶33}** Additionally, Smith was convicted of abduction. As relevant to the instant case, a person commits abduction if he or she "knowingly," "[b]y force or

threat" and "without privilege to do so," "restrain[s] the liberty of another person under circumstances that create a risk of physical harm to the victim or place[s] the other person in fear." R.C. 2905.02(A)(2). The definition of "knowingly" is set forth in the preceding paragraph. "'Force' means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." RC. 2901.01(A)(1). "'Risk' means a significant possibility, as contrasted with a remote possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(7). "'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). Finally, there is no evidence or argument Smith had a privilege to restrain Frye's liberty.

### iii.    Analysis

{¶34} In this assignment of error, Smith challenges only the sufficiency of the evidence identifying him as the perpetrator of the crimes. According to Smith, Frye was the only person who could identify him and Frye did not testify at trial. Smith contends the testimony admitted at the trial through Lieutenant Harris did not demonstrate Smith committed the offenses because Frye was initially unwilling to accuse Smith of committing the offenses despite repeated inquires by the lieutenant. We disagree.

**{¶35}** The evidence at trial supported a finding beyond a reasonable doubt that Smith was the perpetrator of the offenses against Frye. This included Frye's identification of Smith through the preliminary hearing testimony, which was admitted at trial. *State v. Ell*, 12th Dist. Fayette No. CA2023-03-006, 2023-Ohio-4583, ¶ 15 (the victim's testimony, standing alone, can be "sufficient to support a conviction for felonious assault in violation of R.C. 2903.11(A)(1)"). Additionally, Frye identified Smith as his assailant to Lieutenant Harris and to Detective Diem, who testified at trial. Further, Detective Diem and Dr. Bear both testified Frye informed them he had been assaulted with a baseball bat, and Dr. Bear confirmed Frye's injuries were consistent with such an attack. Importantly, a baseball bat was found inside the residence. Moreover, upon his arrival at 348 Owens Street, Lieutenant Harris observed Smith leaving the residence where the assault occurred. After viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that the State identified Smith as the assailant who restrained Frye and beat him. *State v. Beaver*, 3d Dist. Union No. 14-13-15, 2014-Ohio-4995, ¶ 37-39 (sufficient evidence supported appellant's felonious-assault conviction where victim testified appellant had punched her, thus breaking her nose and causing facial bruising and requiring surgery, and police officer testified victim said appellant had punched her in the face).

**{¶36}** Smith's third assignment of error is overruled.

### D.      Fourth Assignment of Error

**{¶37}** In the fourth assignment of error, Smith submits that the evidence at trial manifestly weighed against convicting him.

### i.      Standard of Review

**{¶38}** The "manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion." *Messenger*, 2022-Ohio-4562, at ¶ 26. "To evaluate a claim that a jury verdict is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 168, citing *Thompkins*, 78 Ohio St.3d at 387. Yet, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

### ii.      Analysis

**{¶39}** Similar to the third assignment of error, Smith argues in this assignment of error that Frye did not testify at the trial and the other identification

evidence was contradictory. (Appellant's Brief at 12). Thus, according to Smith, the evidence weighed manifestly against convicting him. We disagree.

**{¶40}** Having conducted a review of the record and evidence in accordance with the standard set forth above, we cannot conclude the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse the convictions and order a new trial. *See Beaver*, 2014-Ohio-4995, at ¶ 45 (evidence supporting sufficiency of the evidence likewise supported that appellant committed felonious assault by manifest weight of the evidence); *State v. Grimes*, 3d Dist. Union No. 14-05-20, 2006-Ohio-2144, ¶ 11-14 (State's witnesses provided testimony regarding the elements of abduction; overruling assignment of error regarding manifest weight of the evidence).

**{¶41}** Frye's preliminary hearing testimony, which was admitted at trial, included details about how the beating he endured from Smith caused three fractures in his right arm, a cracked eye socket, and 20 stitches to his shin. Lieutenant Harris testified he could tell by what he saw and his interactions with Frye that Frye was in an enormous amount of pain. Frye's injuries required immediate medical attention and (later) surgery. The physical harm Smith caused Frye qualifies as "serious physical harm" to another. R.C. 2901.01(A)(5).

**{¶42}** Regarding the abduction conviction, evidence supported finding beyond a reasonable doubt that Smith knowingly used force and threats to restrain

Frye's liberty under circumstances that created a risk of physical harm and placed Frye in fear. R.C. 2905.02(A)(2). Through his preliminary hearing testimony, Frye testified Smith threatened him with physical harm if he tried to leave the residence at 348 Owens Street. Additionally, Lieutenant Harris testified regarding Frye's injuries, the heavy ligature marks on his wrist, and the twine found in the same room. (Nov. 29, 2022 Trial Tr. at 73-74, 76, 84). The reasonable inference, based on all the evidence, is Smith tied up Frye, thus also restraining his liberty by force. Not only did the evidence support that the circumstances created a risk of physical harm, but Frye testified he was scared for his life and was only freed from the situation by the police showing up.

{¶43} Smith's fourth assignment of error is not well taken.

### E. Fifth Assignment of Error

{¶44} In the fifth assignment of error, Smith argues that the trial court erred in failing to merge his felonious assault and abduction offenses because he had one animus and engaged in one continuing course of conduct.

### i. Standard of Review

{¶45} An appellate court "appl[ies] a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination." *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 28. "Merger is a sentencing question, not an additional burden of proof shouldered by the state at trial." *State v. Washington*,

137 Ohio St.3d 427, 2013-Ohio-4982, ¶ 18. The defendant bears the burden of establishing he or she is entitled to the protection against multiple punishments for a single criminal act provided by RC. 2941.25. *Id.*

### ii. Applicable Law

**{¶46}** "When a defendant's conduct supports multiple offenses, courts apply the allied offenses analysis set forth in R.C. 2941.25 to determine if the offenses merge or if the defendant may be convicted of separate offenses." *State v. Woodard*, 2d Dist. Montgomery No. 29110, 2022-Ohio-3081, ¶ 35. The statute states:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25.

**{¶47}** The Ohio Supreme Court clarified certain aspects of the statute in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995. The court's syllabus held:

> 1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the animus, and the import.

> 2. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses

involving separate victims or if the harm that results from each offense is separate and identifiable.

3. Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.

*Ruff*, 2015-Ohio-995, at syllabus. "[A] defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense." *Id.* at ¶ 26. "The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import." *Id.*

### iii.    Analysis

**{¶48}** Smith argues the felonious assault and abduction offenses should have merged because they involved one course of conduct and were not committed separately. According to Smith, they involved one victim and did not occur over a prolonged period of time. (Appellant's Brief at 13).

**{¶49}** Here, the felonious assault and abduction offenses were of dissimilar import because the harm that resulted from Smith's conduct for each offense is separate and identifiable. As explained above, evidence at trial supported that Smith knowingly restrained Frye's liberty by tying him up and threatening him if he tried to leave. The ligature marks on Frye's wrists demonstrate the use of force and harm

caused in committing this offense. Fry testified he was afraid and could only leave when the police arrived. Separately, the evidence at trial also supported that Smith knowingly caused serious physical harm to Frye by beating him. The harm that resulted from this felonious assault (i.e., three fractures in his right arm, a cracked eye socket, and 20 stitches to his shin) was far more extensive and separate from the harm inflicted by the abduction. Therefore, the offenses were not allied offenses of similar import that merged for purposes of sentencing. *See Woodard*, 2022-Ohio-3081, at ¶ 44 (the two offenses did not merge because the harm from the abduction involved restraining victim's liberty and causing her risk of physical harm and fearing for her life, while the harm from the felonious assault involved choking her to unconsciousness). Smith's fifth assignment of error is overruled.

## IV.    CONCLUSION

{¶50} For the foregoing reasons, Smith's assignments of error are overruled. Having found no error prejudicial to the appellant in the particulars assigned and argued, we affirm the judgment of the Marion County Court of Common Pleas.

*Judgment Affirmed*

**WALDICK and ZIMMERMAN, J.J., concur.**

**/hls**